1825.

HUNN
v
NORTON.

---

## THOMAS SNOWDEN
### v.
## MORDECAI M. NOAH, JOHN D. BROWN and others.

A newspaper establishment is a subject of property and of contract, and the right to it may be protected by this court.

A person having sold such an establishment, has no right to continue a publication as the same : but he may set up a different rival paper.

If the question whether the rival paper is the same or different, be doubtful, that doubt is a sufficient reason to refuse an injunction, and to leave the parties to their remedies at law.

The writ of injunction is used only for the protection of rights which are clear, or at least, free from reasonable doubt.

THE bill in this cause set forth a deed poll, dated the 14th of September 1824, whereby Henry Eckford, for the consideration of one dollar, assigned to John D. Brown and several others, " all his right, &c. in and to the newspaper " entitled the National Advocate, now publishing in the city of " New York, at number 48 Wall street, with all the books, " types, presses, issues, profits, rights and incidents belonging

1825.
24th and 31st January.

*Newspaper establishments.*
*Injunction.*

1825.

SNOWDEN
v.
NOAH.

" or appertaining to the said newspaper." The assignment was in trust, to make sale of the establishment. The complainant then stated, that the trustees published the National Advocate daily for the city, and semiweekly for the country, issuing a very considerable number of papers, and that the income from subscriptions and advertisements was several thousand dollars: that the paper was printed at No. 48 Wall street, where persons were accustomed to carry their advertisements; and that the trustees employed agents to print and distribute the paper, and that they owned and were possessed of the printing establishment belonging to the paper, and the books of account, with the lists of the subscribers and their residences, all which were conveyed to the trustees: that the trustees derived their right from the defendant Noah and one Phillips, who formerly occupied the tenement No. 48 Wall street for the purposes of the publication; and that they were proprietors of the establishment with the good will of the same, from which they derived a very considerable income: that in September last, the trustees employed Noah at a stipulated salary, to edit the paper, but subject to be discharged at will: that on the 8th of December, he published an advertisement for the sale of the establishment, accompanied by certain explanatory remarks, which are set forth in the bill, and which, after giving a detail of the expenditures and the income from subscriptions and advertisements, added, " I can make it apparent to an approved purchaser, that by " attention alone, the profits of the establishment may be " fairly estimated at from 4 to 5,000 dollars per annum:" that the complainant became the purchaser for 11,500 dollars, intending to purchase the establishment with its good will, and its books, and all appurtenances: that after the purchase on the 14th of December 1824, the trustees accompanied the complainant to the office of the paper; gave him possession; and discharged Noah.

The bill then complains, that Noah interrupted the possession of the complainant at No. 48 Wall street, and forcibly ejected him; that he induced subscribers to withdraw their good will and patronage: and that to do this more effectually Noah published on the 15th of December, a hand bill, enti-

tled " National Advocate extra," and has since continued another regular paper, under the title of " the New York National Advocate," which is published at 48 Wall street; where he receives and intercepts advertisements intended for the National Advocate, and has retained the subscription and other books, till he had made copies of them, for the purpose of supplanting the complainant, and depriving him of the good will of the establishment, &c. That Noah is wholly insolvent, and was discharged in 1824 under the act, &c. That the trustees paid the rent of the tenement during his occupation; that it was fully and clearly understood between the parties that the good will of the establishment was to be sold with it, and the premises to be delivered to complainant, and that Noah was privy to that understanding.

The bill prays, that the trustees may be compelled to repay the complainant his purchase money: or to put him in possession: that Noah may account for profits received, &c. and for an injunction to prohibit him from publishing any paper under the title of the National Advocate; from sending it to the old subscribers; from collecting subscriptions, receiving advertisements, &c.

MR. D. B. OGDEN for the complainant, upon the filing of the bill, moved for an injunction according to its payer.

The conduct of the defendant is a gross fraud. He advertises the establishment for sale, commends it as very valuable, and advises a purchase. Then, when the purchase is made, he continues the paper with only an immaterial difference in the title; he continues it at the same place, and there solicits and receives advertisements; sends his paper to former customers, and in effect usurps that very good will of the establishment which constitutes its principal value, and which he had just induced the complainant to purchase. Mean time the defendant is insolvent, so that we have no remedy, but in prevention.

This court will give protection in every case of fraud. Injunctions have been granted to restrain publications in cases of invasions of right, far less violent.

The counsel then cited and commented upon the cases in 17 Ves. 336. 8 Ves. 215. Eden inj. 224, 5, 6.

1825.

SNOWDEN
v.
NOAH.

45

1825.

SNOWDEN
v.
NOAH.

The courts will take notice of that which is called the good will of a trade or business. It is benefit derived from customers ; in this case, the subscriptions, advertisements, &c.

The defendant does not treat his paper as a new one ; but as a continuation of the former National Advocate. He speaks of the continuation of advertisements and subscriptions. There was nothing of all this in Hogg v. Kirby. It will be urged that the act is lawful. But if fraudulent, it is not lawful. The case of Hogg v. Kirby goes much further than this.

The injury is irreparable to the complainant. No case can be more urgent on that ground.

MR. SPENCER for the defendants, read the assignment of the establishment, to show that the place, is only mentioned descriptively and not as part of the property sold. The complainant did not acquire the right to issue any paper from No. 48 Wall street, of which the defendant holds the lease in his individual name. He has then a right to issue a paper from that place ; and universally he has a right to issue advertisements for whoever will send them. And he, or any other publisher, has a right to send his paper to the readers of any other paper.

It is not alleged that the public are deceived by the title. The real gravamen is that the public prefer Noah's paper. The trustees had no power to sell the point and spirit, the sprightliness, gaiety of heart, and good humour which constitute the character of his paper. Neither did the complainant acquire by his purchase any lien upon the minds of men.

As to seducing away subscribers, it is perfectly lawful. It is the spirit of competition in trade.

In 8 Ves. the case was that of a real continuation of the former publication and great similarity in its appearance. But in Keene and Hawes it is admitted that he might publish a similar work as his own ; not as plaintiff's.

If advertisements are sent to No. 48 Wall street it shows the intention of the publishers that Noah shall publish them.

True, he did at first intend to continue the paper under the former title. But there was locus pœnitentiæ ; and he now expressly invites attention to his paper as being distinct from the other ; Noah's Advocate.

If there is any doubt, the chancellor will at least suspend the injunction, till we can have time to answer.

THE CHANCELLOR. The defendant Noah, was the editor but not the proprietor of the newspaper establishment, called the National Advocate; and immediately after the sale of that establishment by its former proprietor to the complainant, Noah established another newspaper, under the title of the New York National Advocate. This new gazette thus established, is sent to the subscribers of the former National Advocate, and Noah has solicited and continues to solicit the support of the patrons of the former paper and of the public, to his new paper. This is briefly and in substance, the case upon which an injunction is now asked.

The business of printing and publishing newspapers, being equally free to all, the loss to one newspaper establishment, which may follow from the competition of any rival establishment, is merely a consequence of the freedom of this occupation, and gives no claim to legal redress. But a newspaper establishment is also a subject of property; and so far as the rights of such an establishment are private and exclusive, this species of property like any other, is entitled to the protection of the laws.

The material property of the National Advocate, is not here in question. The printing office, press, types and other materials of a printing establishment, are subjects of exclusive right; and the injuries alleged in the bill, in respect to these subjects in this case, are matters, for which redress must be sought in the courts of law.

The subject in respect to which an injunction is asked, is what is called the good will of the establishment, or the custom and support which the National Advocate had before received from its subscribers and patrons, or from the public. The effort of Noah, is, to obtain for his newspaper the support of the public in general, and especially, the custom and good will of the friends of the National Advocate; this object is distinctly avowed; and an open appeal is made to the friends of the National Advocate and to the public, to give their support to the new paper. The question is, whether

the acts of Noah, are an invasion of the private rights of Snowden, as the proprietor of the National Advocate, or merely, an exercise of the common right to print and publish a new journal, and to obtain for it patronage.

The open appeal made to the public in favor of the new journal, as a new and distinct paper, seems to remove from this case, every objection. Noah is at liberty, to invite the subscribers and patrons of the National Advocate, to give him their support ; and they are entirely free to accept or reject his invitation. They like others, may give their support to either, or neither, or both of these papers. The only circumstance in this case, which has any appearance of an undue encroachment upon the rights of Snowden, is, that Noah's new paper is published under a name nearly the same with that of Snowden. But the name of the new paper is sufficiently distinct from the name of Snowden's paper, to apprize all persons, that these are really different papers. These different titles and the different matters which must appear in two daily gazettes, seem to afford all the information which can be desired by those who choose to give their patronage to either of these papers. I do not perceive, that any person can be misled in this respect ; and the whole case seems to be nothing more than an open competition between two newspaper establishments, for the good will of those who were the patrons of the first establishment, and for the favor of the public.

The good will of an established trade, the custom of an inn, and the right of a publisher of books, may be injured by acts of deception or piracy ; but the injury for which redress is given in such cases, results from the imposture practised upon the customers of an existing establishment, or upon the public. When the friends of an existing newspaper and the public, are informed by a rival newspaper, that the two papers are not the same, but are distinct establishments, there is no deception ; and the detriment which either establishment may suffer from the competition of the other, results from the free option of those who choose to give their support to one establishment in preference to the other. This employment is subject to all the incidents of a free competition ; and when no

deception is practised, the award of the public or of those who patronise newspapers, must determine the patronage which each rival press shall receive.

The adjudged cases cited in support of this application, are Hogg against Kirby, 8 Vesey junior, 215, and Crutwell against Lye, 17 Vesey junior, 336. These cases seem to be rather authorities against the application. In the last of them, the substance of lord Eldon's opinion, was expressed in the following sentence, which is directly applicable to this case. " It amounts to no more than that he asserts a right to set up " this trade, and has set it up, as the like, but not the same " trade, with that sold; taking only those means, which he " had a right to take, to improve it; and there is no fact, " amounting to fraud, upon the contract made with the " plaintiff."

It appears, to me, that every person who is disposed to patronise or support the National Advocate, may do so, without being deceived or misled by the existence or publication of the New York National Advocate. The struggle of these parties, seems to be merely a competition, in which there is no imposture or deception. I do not perceive any fraud; but if there is any question whether the acts of Noah, are a fair competition or a fraudulent interference with the establishment of Snowden, it is a question wholly uncertain; and as a doubtful matter of fact, it should be left to the trial by jury, in the ordinary course of law. The writ of injunction is a most important remedy; but it is used to protect rights which are clear, or at least, free from reasonable doubt. Upon all the facts of the case, the motion for an injunction is denied.