CAMPBELL *against* PERKINS, RICH, AND SAMUEL AND NATHANIEI
B. ELLISON.

The owners of a line of canal boats engaged in the business of common
carriers of passengers and goods, who charter a boat to another transporta-
tion company for a single trip, retaining the charge of it and navigating it
with their own master and crew, are liable to a passenger for the loss of his
goods upon the passage. TAGGART, J., *dissenting*.

Under the former system of pleading, the discharge of a bankrupt under the
United States bankrupt act of 1841, might be given in evidence under a plea
of the general issue with a notice of the discharge.

A claim against a common carrier for the loss of goods entrusted to him is dis
charged by a discharge under the bankrupt act of 1841. It is a claim
arising upon contract.

This was an action on the case, brought against the de-
fendants as common carriers, to recover of them the plaint-
iff's damages for a box containing clothing and money lost
from the canal boat Brilliant, on a passage from Albany to
Buffalo in 1841. The defendant pleaded the general issue,
and the defendant Perkins, under his plea gave notice of
his discharge as a bankrupt under the United States bank-
rupt act of 1841. The cause was twice tried. On the first
trial a verdict was rendered for the plaintiff. The second
trial took place at the Erie circuit in October, 1848, before
Mr. Justice HOYT. The following facts were shown on the
part of the plaintiff:

On the first of September, 1841, the plaintiff with his
family arrived in New York from Scotland, with ten boxes
of household furniture and clothing, and among them the
box which was lost. He there made a bargain with a
transportation agent named Stock, to carry himself, his
family and his goods to Buffalo *in the Albany and Michigan
line*, and received from him a receipt and agreement to be
presented to. Chase & Co. agents at Albany. On his arrival·
there he presented it to Chase & Co., who owned the *New*

*York Transportation Line*, which forwarded them upon the boat Brilliant to Buffalo, where the box was missed. The defendants were, in the year 1841, partners in running the Albany and Michigan line upon the Erie canal from Albany to Buffalo. The defendant Perkins owned the Brilliant, which commonly run in that line. At the time the plaintiff arrived at Albany, Chase & Co. called upon Perkins at the office of the defendants and made a contract with them to run the Brilliant to Buffalo: Chase & Co. were to pay the defendants $65, and have the entire use of the boat, the defendants' hands navigating it. The boat bore the name of the Albany and Michigan line upon its side.

The defendants Rich and Ellisons, by their counsel, then moved for a nonsuit, on the ground that they never assumed the relation and duties of common carriers to the plaintiff, the defendants having merely chartered their boat, captain and hands to Chase & Co. for the trip for a specified sum: that Chase & Co. alone had assumed to him the relation and duties of common carriers: that the captain and hands being for that trip the servants, and under the control of Chase & Co., and in no degree of the defendants, they were not liable under the circumstances. The plaintiff by his counsel insisted that inasmuch as the action was not founded upon contract, but upon the duty of the defendants as common carriers, the plaintiff having given credit to the name of the line painted upon the side of their boat, and entrusted his property on board thereof, she being in the possession and under the control of the defendants' servants, and they having commenced the transportation thereof, the defendants were liable. The court overruled the plaintiff's objection and allowed the nonsuit as to the defendants Rich and Ellison.

The defendant Perkins then offered in evidence his discharge as a bankrupt granted February 6, 1843, by the United States District Court for the Northern District of New York. The plaintiff objected to the evidence on the following grounds:

" 1. The defendant has not pleaded his discharge, but has given notice with his plea of the general issue, that he will prove it. 2. The demand of the *plaintiff* is not such a one as is discharged by the proceedings in bankruptcy. 3. There is no proof of the publication of notice to creditors to show cause against the prayer of the petitioner being granted. 4. There is no proof that Perkins ever petitioned to be discharged from his debts and liabilities. 5. There is no proof that any order to show cause against his petition to be discharged was ever made. 6. There is no proof that notice of any such order was published, or that notice thereof was served upon any of the defendant Perkins's creditors."

The court overruled the objection and received the evidence, and thereupon decided that the discharge was a bar to the action as against the defendant Perkins, and directed the jury to find a verdict in his favor. The supreme court at a general term in the eighth district, affirmed the judgment rendered in favor of the defendants at the circuit. The plaintiff appealed to this court.

*N. Hill, Jr.,* for appellant. I. The plaintiff had a right to treat the defendants as carriers of the goods, notwithstanding their contract with Chase & Co., under which the Brilliant was run. The defendants retained the possession, control and navigation of the vessel, it being conducted by their master and crew, at their expense and in the name of their line. They were therefore *owners for the voyage,* who are always regarded as the carriers, and are liable for property lost by the master and crew. (*Flanders' Mar. Law,* § 201; *Ware's R.* 156; 35 *Eng. Com. Law,* 544; *Fenton* v. *Dublin Steam Packet;* 5 *Bos. & Pul.* 182, 186, *Fletcher* v. *Braddick S. C. N. R.* 182; 11 *Barb.* 501, *Williams* v. *Johnson;* 6 *Binn.* 129, *Sanderson* v. *Lamberton.*) The duty of the defendants which the law imposed was due to the plaintiff, and their contract with Chase & Co. did not destroy it, and if necessary to sustain the action their pro-

mise might be treated as enuring to the plaintiff. (4 *Denio*, 97, *Del. & H. Canal Co.* v. *Westchester Bank;* 2 *Denio*, 45, *Barker* v. *Bucklin;* 17 *Mass.* 400, *Arnold* v. *Lyman.*)

II. The discharge of Perkins under the bankrupt act was improperly admitted in evidence, not having been pleaded as the act of congress requires. (5 *U. S. Stat. at large*, 444, § 4; 5 *Mass.* 515, *Smith* v. *Drew;* 26 *Wend.* 90, *Durant* v. *Supervisors.*) The words of the act are technical, and require a special plea in bar to which a demurrer may be interposed; not a notice or any substitute for a plea. (*Dwar. on Stat.* 702; 4 *Pick.* 410; 2 *R. S.* 352, § 10.

III. The demand in question being for unascertained damages, arising from the defendants wrongful violation of their duty as common carriers, was not affected by the discharge. (5 *U. S. Stat. at Large*, 441, 444.) Even if the plaintiff *might* have treated it as arising *ex contractu*, he was not bound to do so, and the debtor can not elect for him. (6 *Durnf. & East*, 695, *Parker* v. *Norton;* 5 *Iredell's R.* 259, *Williamson* v. *Dickens; Eden on Bankruptcy*, 130-1; *Cullen on Bankruptcy*, 111, 112; 2 *M. & Payne*, 160.) Besides, it was a claim for damages which could not be liquidated except through the intervention of a jury.

TAGGART, J. The judgment in this cause so far as relates to the defendants Rich and Ellison, I think ought to be affirmed. The plaintiff made his contract with Chase and Company to transport him and his goods and effects from New York to Buffalo. It was not material whether he was conveyed in a boat belonging to Chase & Co. or a boat charterd by them belonging to some other person. So far as concerns the plaintiff, Chase & Co. were his carriers, and they alone are liable to him. He made no contract with the defendants. He neither employed nor paid them for transporting him or his effects to Buffalo. The defendants contracted with Chase & Co., and are responsible to them if liable at all. This case is not within the principle of the

SEL. IV.—55

case of *Fenton* v. *The City of Dublin Steam Packet Company*, (8 *Adol.* v. *Ellis*, 835.) It was in that case that the defendants as owners of the steam boat were liable to the plaintiff for sinking his vessel by the steam boat; the defendants having chartered their steam boat to one Dails for six months at 20 pounds per week, the owners to keep her in good and sufficient order for the conveyance of goods, &c., to and from Newcastle and Goole or any other coasting station which Dails might employ her in, Dails to pay all disbursements including harbor fees, pilotage, seamen's and captain's wages, and coal, oil, tallow, &c., for engines and to insure the vessel, the policy to be deposited with the owners. Patterson, Justice, said, " the question is whose servants were the crew, for their negligence has occasioned the accident, I do not say that they are not the servants of the charterer. To hold that the hirer is liable is not inconsistent with holding the latter liable also. The issue is whether the defendants had the possession and care of the vessel by their servants, which brings us back to the question whose servants were the owners. Now on the charter party alone I have no difficulty in saying that they were the servants of the owners." This case differs from the case above cited and the class of cases to which we were cited on the argument in this respect. In that case the action was by a stranger who had made no contract with any one. He had sustained an injury by the negligence of the servants of the owner, and they were not allowed to escape from liability for their negligence because the use of their vessel and the labor of their servants belonged temporarily to a third party, the servants being still under the control of the defendants.

In this case, the action is founded on a duty arising out of contract express or implied, and founded upon a consideration. The defendants made no contract with the plaintiff, owed him no duty and were not liable to him upon or by reason of any contract between them. Can it be pretended that the defendant in case of *Fenton* v. *Dublin*

Campbell *against* Perkins.

*Steam Packet Co.*, would have been held liable to the owner of goods shipped by the steam boat chartered to Dails in pursuance of a contract with the charterers? I think not; and if I am right in this view of the case the defendants in this cause were not liable to the plaintiff for the loss of the box in question. They were not common carriers of the plaintiff's goods, but he must look to Chase & Co. for his indemnity.

A carrier by stage coach by some accident so injures his coach that he is compelled to hire another coach and does hire it with team and driver to take his passengers to their place of destination, and while so using the hired coach the baggage of a passenger is injured or lost. Is the owner of the coach liable to respond to the passenger, or must he look to the carrier with whom he made the contract? I think the latter is alone liable.

For the foregoing reasons I have arrived at the conclusion that the judgment ought to be affirmed as to the defendants Rich and Ellisons, who with Perkins were the owners of the boat hired by Chase & Co. to transport the plaintiff and his goods from Albany to Buffalo, but the majority of my brethren are of opinion that the defendants as owners of the boat were liable to the plaintiff in their character as common carriers, notwithstanding there was no privity of contract between them and the plaintiff: that they had a duty to perform as common carriers and were liable for their failure to perform such duty. The judgment must therefore be reversed as to Rich and the Ellisons, and as to them a new trial be ordered with costs to abide the event.

The judgment as to the defendant Perkins depends upon other principles, viz: 1. Is his certificate of discharge in bankruptcy a defence to the plaintiff's action? 2. Is giving notice of such discharge with the plea of the general issue a sufficient pleading under the provisions of the fourth section of the bankrupt law?

The plaintiff objected to reading the certificate of dis-

charge in bankruptcy of defendant Perkins in evidence on the following grounds:

" 1. He has not pleaded his discharge, but has given notice with his plea of the general issue that he will prove it. 2. The demand of the plaintiff is not such a one as can be discharged by the proceedings in bankruptcy. 3. There is no proof of the publication of notice to creditors to show cause against the prayer of the petition being granted. 4. There is no proof that Perkins ever petitioned to be discharged. 5. There is no proof that any order to show cause against his petition to be discharged was ever made. There is no proof that notice of any such order was published or that notice thereof was served upon any of Perkins's creditors."

Section 4 of the bankrupt act of 1841 provides, among other things, that every bankrupt who shall *bona fide* surrender all his property and rights of property with the exceptions before mentioned for the benefit of his creditors, &c., shall be entitled to a full discharge from all his debts to be decreed and allowed by the court which has declared him a bankrupt, and a certificate thereof granted to him by such court accordingly upon his petition filed for such purpose, and such discharge and certificate when duly proved shall in all courts of justice be decreed a full and complete discharge of all *debts, contracts and other engagements* of such bankrupt, which are provable under said act, and shall be and may be *pleaded* as a full and complete bar to all suits brought in any court of judicature whatever, and the same shall be *conclusive evidence* of *itself* in favor of such bankrupt, unless the same shall be impeached for some fraud or willful concealment by him of his property or rights of property as aforesaid, contrary to the provisions of said act on prior *reasonable notice*, specifying in writing such fraud or concealment.

Section 5 provides that all creditors whose debts are not due and payable until a future day, all annuitants, holders of bottomry and respondentia bonds, holders of policies of

insurance, sureties, endorsers, bail or other persons having uncertain or contingent demands against such bankrupt shall be permitted to come in and prove such debts or claims under said act, and shall have a right when their debts and claims become absolute to have the same allowed them.

The bankrupt act itself, it will be seen, disposes of the four last objections. The certificate is made conclusive evidence itself in favor of the bankrupt unless the same shall be impeached for fraud, &c. In *Sherwood* v. *Mitchell*, 4 *Denio*, 437, the supreme court say, " The discharge is presumptive evidence of all the facts asserted in it, and is conclusive until overthrown by evidence of some fraud which by the act avoids it." See also *Burnside* v. *Bingham*, 8 *Metcalf Rep.* ; *Hubbell* v. *Cramp.*, 11 *Paige*, 310; *Ruckman* v. *Cowell*, 1 *Coms.* 505.

There remain then but the two questions above mentioned, being the two first of the said objections taken by the plaintiff to reading the discharge in evidence.

First, that the discharge should have been *pleaded* and can not be given in evidence under a notice.

This question has never been decided in this state, and we must determine whether the words of the statute as contended for by the appellant must be complied with literally, and require a special plea in bar to be pleaded to which a demurrer may be interposed, or whether the statute is to have a liberal construction and be carried out in accordance with the general rules and principles of pleading where the action may be brought.

The plaintiff can not be injured by allowing the discharge to be given under the notice, as his right to prove that it was obtained by fraud, or that the demand belonged to a class of demands not discharged, is not affected by its being so given in evidence. In the case of *Ruckman* v. *Cowell* above cited, the court held that the court should receive evidence to impeach the discharge without giving previous notice of such impeaching evidence in those

cases where no opportunity was allowed to give such notice. The objection, therefore, that the plaintiff can not impeach the discharge because he has. given no notice of such impeachment, is not tenable. Upon proof of the discharge by the defendant under his notice, the plaintiff has a right to prove that the same was void for fraud, or wilful concealment by the defendant of his property or rights of property, without having given prior reasonable notice of such fraud or concealment.

Indeed, the case of *Ruckman* v. *Cowell* disposes of this question, so far as it may be settled by analogy. In that case the court approved of the decision of the supreme court, admitting the disclosure in evidence without any plea or notice thereof, on the ground that where the form of the pleading is such as to afford no opportunity of pleading the discharge, it may be given in evidence on the trial without notice. If the construction of the statute contended for by the appellant is to prevail, the discharge ought not to have been admitted in evidence even in that case. Such construction would have entirely defeated the operation of the statute.

I am aware that it has been the general practice to plead the discharge; but the statute ought not to have so strict a construction as to require a departure from the ordinary practice of the state courts, and the certificate of discharge was properly received in evidence in this cause under the notice.

It is objected that the notice itself was insufficient. It is however a sufficient answer to this objection that no such point was taken on the trial.

We are lastly to consider whether the demand of the plaintiff is such a one as can be discharged by the proceedings in bankruptcy. The action against a common carrier is usually an action for a wrong, and not strictly upon contract. That it is properly an action for a wrong has been settled by numerous cases in the books. It was so held in the case of *Brotherton* v. *Wood*, 5 *Brod. & Bing.* 54; *and Ansell* v. *Waterhouse*, 2 *Chitty. Rep.* 1.

Campbell *against* Perkins.

It has also been decided by the supreme court in this state that the defendant's liability for a tort is not affected by his discharge under the bankrupt law, unless before the petition in bankruptcy was presented the demand had become a debt by being converted into a judgment. It was so held in *Crouch* v. *Gridley,* 6 *Hill,* 250, for seducing the plaintiff's daughter. So in the case of *Kellogg* v. *Schuyler,* 2 *Denio,* 73, which was an action of trespass pending at the time of presenting the petition, held not affected by the discharge. So in the case of *Spalding* v. *The People,* 7 *Hill,* 301, held in the court of errors that a fine imposed upon a party by the court of chancery for the wilful violation of an injunction, is not affected by his discharge under the bankrupt law. The latter case was removed to the supreme court of the United States and the judgment of the court of errors was affirmed in that court.

These decisions, however, do not affect the questions to be decided in this cause. The action here, though in form for a wrong, is founded on a contract. It is founded on an " engagement," and is technically a " claim." The actions of trespass and seduction are technically neither engagements nor claims.

It was contended on the argument that the cause of action in this case was a claim for damages which could not be liquidated except through the intervention of a jury. To this it may be answered that the bankrupt's discharge operates as well upon unliquidated as liquidated damages. There is nothing in the act confining it to a debt or to liquidated damages. It is sufficient if the claim or demand is founded upon " contract" or " engagement." The plaintiff can not defeat the defendant's plea of bankruptcy by bringing his action in tort instead of contract. He can not by varying his remedy change the legal rights of the defendant.

In the case of *Brown* v. *Treat,* 1 *Hill,* 225, which was a motion to discharge the defendant from arrest upon a *capias ad satisfaciendum* issued upon a judgment obtained

against him, the first two counts of the declaration were in assumpsit, the third in case for negligence of the defendants as warehousemen in not safely keeping and delivering to the defendant certain goods and chattels; the fourth was in trover for the same goods. The court, Cowen, J., say, " It is true that the bailor who sues his bailee for not fulfilling such implied contract may in form overlook it, and at his election resort to case or trover according to the nature of the injury. Yet I hardly think the mere form of the action should be allowed to govern the right of imprisonment. The statute forbids imprisonment by execution in a suit to recover damages for the nonperformance of any contract. The defendant Treat has been imprisoned in a case clearly within these words. It seems to me the statute was intended to reach all those cases wherein the plaintiff may in fact have given credit to the defendant, except such as are mentioned in the second section. He can not by electing to sue in case or trover change the truth, and it is in this, that the privilege of the defendant consists. The law will not allow that to be done indirectly which it forbids to be done directly. Bailment to an infant presents a similar instance. The action being directly for his negligence, will not oust him of his defence though calling for a plea of not guilty.

So in case of *The People* v. *Kendall*, 25 *Wendell*, 399, the court, (Nelson, Ch. J.,) say, " It is a well settled rule that a matter arising *ex contractu* though infected with fraud can not be changed into a *tort* in order to charge the infant by a change in the remedy." It is true the case of *Wallace* v. *Morss*, 5 *Hill*, 392, seems to militate against this doctrine, but upon examination of that case it will be found that the authorities cited established nothing more than that the title to goods obtained by false representations does not pass, and the plaintiff in that case was allowed to recover, (the presumption is, in trover, for the report of the case does not state.)

The principle that where the substantial ground of action rests on promises, the plaintiff can not by changing

the form of action make a person liable who would not have been liable on the promise, is decided in the case of *Green* v. *Greenbank*, 2 *Marshall*, 485; 4 *Eng. Com. Law Rep.* 375. This was an action on the case against an infant for falsely warranting a mare sold by the defendant. to the plaintiff to be sound, knowing her to be unsound. So an infant is not liable on the custom of the realm for the loss of goods committed to his care as an innkeeper.

In the case of *Campbell* v. *Stakes*, 2 *Wendell*, 137, decided in the court of errors, the chancellor who delivered the opinion of the court, which was concurred in unanimously, (the case being an action of trespass for misusing a horse hired by the defendant who was an infant,) says, " If the plaintiff declares in case, he affirms the contract of hiring, and the plea of infancy is a good defence to such action, for he can not affirm the contract and at the same time by alleging a tortious breach thereof deprive the defendant of his plea of infancy; and cited the case of *Jennings* v. *Rundall*, 8 *Term Rep.* 335, and the above case 'of *Green* v. *Greenbank.*

Judgment must be affirmed as to the defendant Perkins.

Ordered accordingly.