## SUPREME COURT.

MARCUS T. HUN, as receiver of the Central Park Savings Bank, respondent, agt. JOHN G. CARY *et al.*, appellants.

*Savings banks—Liability of trustees for damages caused by their misconduct— discharge in bankruptcy—A claim for unliquidated damages arising solely from a tort not provable in bankruptcy.*

Trustees of a savings bank are liable for damages caused by their misconduct in the management of the affairs of the bank.

Where the proof showed that the bank was substantially insolvent, owing its depositors over $70,000, and its assets were entirely insufficient in amount and in an unsatisfactory shape to meet any sudden or unusual call. In this condition of affairs the trustees authorized the purchase of four lots, at the cost of $74,500, obligating themselves to build a building on one of the lots to cost $25,000:

*Held*, that such a state of affairs justified a finding by the jury that this was not a case of mere error or mistake of judgment on the part of the trustees, but that it was a case of improvidence, of reckless, unreasonable extravagance, in which the trustees failed in that measure of reasonable prudence, care and skill which the law requires, and imposes liability upon them for loss thereby occasioned.

Certain of the defendants pleaded a discharge in bankruptcy:

*Held*, that they were not relieved thereby. The cause of action was for unliquidated damages arising solely from a tort. Such a claim is not provable against the bankrupt estate.

As to one of the defendants, Philip Smith, there was no evidence, other than the minutes, of his attendance at the meeting which authorized the purchase; he, himself, denied such attendance in the most positive terms and asserted his entire ignorance of the transaction until after it was closed:

*Held*, that this entitled him to a dismissal of the complaint, that he was not liable because of his subsequent inaction.

*First Department, General Term, January,* 1880.

APPEAL from a judgment entered upon the verdict of a jury and from an order denying the defendant's motion for a new trial.

*E. Ellery Anderson*, for appellant.

*Frederick H. Man*, for appellants Gearty and Hoffman.

*Abram Wakeman*, for appellant Philip Smith.

*Francis E. Barlow*, for respondent.

BARRETT, *J.* — (1.) The charge against these trustees is not improvidence in the terms of the purchase, but dereliction of duty in buying the land at all.

The question is, whether the statutory power to invest in a suitable lot and banking-house was abused.

The bank had never been successful. From the first the annual payments exceeded the receipts. In 1871 there was a change for the better, but in 1872 the receipts again fell behind, and at the time of the purchase there was a deficiency of several thousand dollars, represented in part by the safe and fixtures.

It is not too much to say that the bank at this time was substantially insolvent. It owed its depositors over $70,000, and its assets, apart from their insufficiency in amount, were in an unsatisfactory shape to meet any sudden or unusual call. One item consisted of a $40,000 mortgage upon No. 15 West Forty-seventh street, in this city, another of $5,500 on property in Brooklyn. Upwards of $3,000 was out on call to persons whose names did not appear upon the books. The actual cash on hand amounted to but something over $13,000. In this condition of affairs the trustees authorized the purchase of four lots, three more than were necessary, for $74,500.

Of this sum, $10,000 was to be paid upon the delivery of the deed, and the balance in two years' mortgage, with privilege of renewal for four years more.

This latter privilege, however, was conditioned upon the erection of a building worth at least $25,000 upon the corner lot.

It seems to us, as it must have to the jury, that this, under the circumstances, was an extraordinary transaction. It was proposed to withdraw $10,000 at once from the very meagre cash resources of the bank, leaving less than $4,000 in addition to the not fully exposed call loans and some other trifles, to meet the current demands of over 1,000 depositors aggregating $70,433.77. A large interest and tax account was also to be thrown upon the bank besides the burden of either paying off the mortgages in two years, or of raising the funds to erect a $25,000 building. All this with nothing save a small business and a yearly deficit to look back upon.

To talk of this as a mere error of judgment is idle. It was the heighth of imprudence. It exhibited a thoroughly rash and purely speculative spirit. No man of ordinary prudence would have thought of acting thus in his own affairs.

Had it reached the ears of the depositors an immediate run upon the bank would have been entirely natural and probable.

The explanation given by the trustees are wholly unsatisfactory. Their place of business was, they say, unattractive and unsafe, very good reasons for a change, but not for *this* change, for renting a more suitable *but always appropriate* banking-house; not for a purchase out of all keeping with their condition and surroundings.

And further, the force of these explanations is very much weakened by the absence of *immediate necessity*, as evidenced by the delay thereafter of nearly two years before proceeding to build.

It is true that the corner lot could only be secured by taking the plot and that the three unnecessary lots were afterwards well sold. But the trustees had no right to violate the law. The fact that no loss ensued does not render the act praiseworthy. It simply eliminates the penalty. Trustees must not be wiser than the law. But treat the transaction as in effect an authorized purchase of a single lot for $29,250 and the result is the same. It is only a difference in degree. Such a purchase was entirely inappropriate and cannot be

regarded as within any reasonable definition of enterprise. It was competent for the jury to pronounce it, as by their verdict they have done, a reckless hazarding of the depositors' interests upon the mere chance of success, upon the bare possibility of securing expansion combined with confidence.

We have alluded to the proofs thus fully for the reason that the case presents, in the main, only questions of fact. The charge of the learned judge was not unfavorable to the defendant. He submitted the case fairly, clearly, and with much fullness of illustration, substantially as directed by this court on a previous appeal. There was no exception to his instructions as to the pre-requisites to legal liability. The verdict which followed was amply supported by the evidence and must be sustained.

(2.) Certain of the defendants pleaded a discharge in bankruptcy. It was held that they were not relieved thereby. We think this ruling was correct. The claim was not provable against the bankrupt's estate. The cause of action was for unliquidated damages arising solely from a tort. There is a class of cases where demands in form *ex delicto,* but founded upon contract, are discharged (*Campbell* agt. *Perkins,* 8 *N. Y.,* 430). This is upon the principle that a contract may be implied from the legal duty. Here, however, the action is not founded upon a contract, either expressed or implied, but solely upon the misfeasance. It is argued that the obligation of the trustees is based upon their having received the depositors' money under an implied agreement to preserve and restore it. This is an inaccurate view of the legal relations of the trustees to the depositors, and of the principle upon which the liability rests. The trustees did not receive the depositors' money nor did they agree, either expressly or by implication, to return it. This the bank did.

The general direction and management of the corporation are confided to the trustees. To all parties concerned they owe fidelity and vigilance. If they fail in these particulars, they fail in their duty, not in the performance of any con-

tract obligation. The defendants do not distinguish between the contract relation in its legal aspect and the implied obligation in an ethical sense, which rests upon every one to do his duty in all the relations of life.

In the case of an officer or agent of the corporation who has actually received and misapplied specific sums, there is a genuine instance of an implied contract to restore the money. Indeed, an action for money had and received would lie, notwithstanding the tort element. There the claim is clearly provable (*See In re Baxter*, 18 *N. B. R.*, 62). From such a demand the bankrupt is released, unless the case comes within the exceptions.

(3.) A different question arises with respect to the defendant Philip Smith. There was no evidence, other than the minutes, of his attendance at the meeting which authorized the purchase. He, himself, denied such attendance in the most positive terms and asserted his entire ignorance of the transaction until after it was closed. We think this entitled Mr. Smith to a dismissal of the complaint. There was no conflict of evidence and nothing to go to the jury. If the secretary or any one else had testified to Mr. Smith's attendance, that, of course, would have involved a conflict. But the *prima facie* case made by the secretary's unsworn declaration contained in the minutes was absolutely overthrown by Mr. Smith's testimony; that is, unless such testimony is to be disregarded. But it cannot be disregarded by either court or jury, for it was not impaired on cross-examination, nor was Mr. Smith's credibility in anywise impeached or affected. Nor is he liable because of his subsequent inaction. Such inaction is not in fact the charge made against him. But even if it were, what could he do? The transaction was executed and completed. It was authorized by law. It was. valid as between grantor and grantee. He could not have had it rescinded or set aside. A different question would have been presented if it had been *ultra vires* or fraudulent. It might then be urged that a trustee is bound to see to it that

Hun agt.· Cary *et al.*

the corporate moneys are not dissipated in violation of statutory inhibition. But he cannot be expected to follow up every negligent act which transpires in his absence, especially where he is powerless to remedy the evil, and his protest would be a mere *brutum fulmen.*

(4.) The $2,000 paid by Messrs. Lauterback & Hornthal should have been allowed. It sufficiently appeared that it was paid on the present claim. A plea was unnecessary. The effect of the payment was to reduce the damages *pro tanto.* If the amount was not in reality paid on this claim, the plaintiff should have proved the actual fact. Upon the evidence before us it would be manifestly unjust to permit the plaintiff to recover all the damages which, in the opinion of the jury, was sustained, and $2,000 besides.

It was error to refuse the charge, as requested, " that if any damages were given the $2,000 must be deducted."

The judgment must, therefore, be reversed and a new trial ordered absolutely as to Philip Smith, with costs to abide the event.

As to all the other defendants the judgments must also be reversed and a new trial ordered, with costs to abide the event, unless the plaintiff within ten days stipulate to reduce the judgment by deducting therefrom $2,100 and interest, being $2,000 from the verdict and $100 from the extra allowance.

In case such stipulation be given the judgment, as thus reduced, is affirmed without costs of this appeal.

I concur, N. D.