LITTLE v. GALLUS et al.

(Supreme Court, Appellate Division, Fourth Department. April, 1896.)

Dissenting opinion. For majority opinion, see 38 N. Y. Supp. 487.

Action to restrain defendants from using or disclosing secrets of trade or manufacture which plaintiff claimed belonged to him, and which defendants Gallus and Bostwick became possessed of while employed in plaintiff's factory. It is alleged in the complaint that defendant Gallus was cautioned not to disclose any information of plaintiff's formulas, processes, appliances, or machinery, and that he agreed not to do so, excepting to such employés as were necessary to properly carry on the business; that, by reason of the position he occupied, it was necessary he should become familiar with the processes, appliances, and formulas; and that it was impossible to conceal from him some information in regard to such formulas. An allegation to the same effect is made in respect to Bostwick, and that they both acquired, by virtue of their employment, considerable information in regard to such formulas. Evidence was given tending to show that plaintiff commenced the manufacture of typewriter ribbons at Rochester in 1885, when he had no knowledge as to the processes used in the manufacture of ribbons or carbon paper; that the art was then in its infancy, and that there were in this country only two known manufacturers of typewriter ribbons; that plaintiff experimented and expended large sums of money and a great deal of time in making exper-

iments, devising and making machinery, and establishing the business; that, since he engaged in this enterprise, the business has grown to large proportions, and the number engaged in the manufacture of these ribbons has increased from two to upwards of twelve; that every formula, process, and machine used by him were discovered, invented, or devised by him or by his superintendent, Mr. Bettys; that defendant Gallus, being then 14 or 15 years of age, was, in 1886 or 1887, engaged by plaintiff to work in his factory. He was employed in "doing up ribbons" and at general work for a time, and was afterwards made superintendent of the ribbon department, where he continued for several years, and until his discharge. During the time of his employment, he assisted plaintiff in making experiments, and thus acquired all the knowledge he had of that business. He says: "I considered myself competent, from the knowledge I had gained in Little's factory, to make typewriter ribbons." Defendant Bostwick, when 18 years of age, was employed in the factory. He continued for 2 years, and claims to have learned, while engaged in such employment, all he knew of the manufacture of typewriter ribbons and carbon paper. Bostwick was discharged in February, when he was still a minor, and Gallus in July following, at which time he was in the twenty-second year of his age. Thereupon these defendants began the organization of a company for the purpose of manufacturing typewriter ribbons and carbon paper. In December, 1894, the defendant company was incorporated, Gallus and Bostwick constituting two of the incorporators, directors, and stockholders of the company, the principal place of business of which is at Rochester, where the plaintiff's manufactory is located. The corporation was formed for the purpose of manufacturing and selling typewriter ribbons and supplies, and was so engaged to the time of the trial. Gallus and Bostwick are the only ones connected with the defendant company who are acquainted with the process of manufacturing typewriter ribbons.

Walter S. Hubbell, for appellant.

C. M. Allen, for respondent Rochester Ribbon & Carbon Co.

Richard E. White, for respondents Gallus and Bostwick.

GREEN, J. (dissenting). There was no agreement in writing between these parties, nor is there any evidence tending to show that, at the time these defendants or either of them entered the employment of plaintiff, he informed them of the necessity of keeping secret the knowledge they might acquire in the performance of their duties, or that their relations were of a confidential character, though the plaintiff testifies that shortly after Gallus entered his employment, and on several occasions thereafter, he was cautioned to keep secret from others what he might learn of the processes of manufacture, and that he promised to do so; also, that Bostwick was given to understand that his employment was to be considered as one of a secret and confidential character. It appears that Gallus received only the ordinary wages of a boy engaged in ordinary labor, until he was made superintendent of the ribbon department, and then only such wages as one who had qualified himself for that position would receive. Nor does it appear that Bostwick received anything more than wages commensurate with the nature and character of the labor or duties he was called upon to perform. Consequently, there existed no special consideration to support the express or implied promise of these defendants to abstain from applying to practical uses, and for their own benefit or advantage, the knowledge they may have acquired in the course of their employment. Plaintiff bases his claim for an injunction upon the ground of an agreement, express or implied, to keep secret any knowledge Gallus and Bostwick might,

respectively, acquire as such employés in the course of manufacturing or in assisting the plaintiff in his experimental investigations. Plaintiff's contention appears to be that, by experimental investigations, he discovered or invented a secret formula or process of manufacture of certain articles, and devised certain appliances and machinery; that the defendants Gallus and Bostwick, by reason of their employment and duties, and while engaged in assisting him in mixing the ingredients, and in other ways, acquired knowledge of such secret process, formula, and machinery; that the employment was of such a confidential character that the law will infer or imply an agreement, even though none may in fact exist, on the part of the employés, that they will not disclose or divulge the knowledge or information so acquired, or put it to practical use in opposition to their employer; and that to do so constitutes such a violation of contract and breach of trust and confidence that a court of equity will enjoin. The doctrine upon which courts of equity proceed in cases of this character, and the scope and limits of that doctrine, require an examination of the adjudications pertaining to that subject.

In Newbery v. James, 2 Mer. 446, Lord Eldon refused an injunction against imparting, in violation of an agreement, a secret for the manufacture of a medicine, and the sale of such medicine. "The only way by which a specific performance could be effected would be by a perpetual injunction, but this would be of no avail, unless a disclosure were made to enable the court to ascertain whether it was or was not an infringement; for, if a party comes here to complain of a breach of injunction, it is incumbent on him first to show that injunction has been violated."

In Williams v. Williams, 3 Mer. 157, the court said it did not think it ought to struggle to protect this sort of secrets in medicine; that whether a contracting party is entitled to the protection of the court, in the exercise of its jurisdiction, to decree the specific performance of agreements by restraining a party to the contract from divulging the secret he has promised to keep, was a question requiring very great consideration.

In Deming v. Chapman, 11 How. Prac. 383, Roosevelt, J., refused an injunction to restrain defendant from divulging or teaching the secret art or invention according to the method which the plaintiff had taught him, and which he had agreed not to divulge. "How can the courts, in effect, secure an invention without a patent, and for a period of indefinite duration, instead of the limited time of fourteen years? Can the state tribunals assume the same functions after the general government has acted upon the subject? But how is a decree, if made, to be enforced? A question of identity arises for the court to determine, and how is the identity of two things to be investigated if we are not permitted to inquire what the given things are? But, the moment the investigation takes place, the secret vanishes, its exclusiveness is gone; and, with the exclusiveness of the subject of the action, the action itself disappears,"—citing Newbery v. James, 2 Mer. 446, and Williams v. Williams, 3 Mer. 160.

In Yovatt v. Winyard, 1 Jac. & W. 394, it was agreed that the employé should not be taught the mode of composing the medicines,

but he surreptitiously copied the receipts, and was selling the med-
icines, with printed instructions for administering them which were
almost literal copies of those composed by the plaintiff.   An injunc-
tion was granted, on the ground that there was a breach of trust and
confidence.

In Green v. Folgham, 1 Sim. & S. 398, upon a trust admitted, an
account was decreed against the party to whom the secret had been
divulged.

In Morison v. Moat, 9 Hare, 241 (relied upon by appellant), an in-
junction was granted to restrain the use of a secret in the compound-
ing of a medicine, and to restrain the sale of such medicine by a
former co-partner, who acquired a knowledge of the secret in vio-
lation of the contract of the party by whom it was communicated,
and in breach of trust and confidence.   The defendant claimed that
for two months he superintended the business in common with his
two co-partners, and during that time saw the mode and manner
of compounding the medicines, and the ingredients thereof, and the
proportions in which such ingredients were used, and acquired a com-
plete practical knowledge of the mode of compounding and mixing
them, and he insisted that he had a right to use that knowledge.
Said the court:

"Undoubtedly, if the facts thus stated be proved,—if the defendant, with
the knowledge and concurrence of the partners, was permitted to acquire,
and did acquire, a full knowledge of the mode of compounding these medi-
cines, and of the secret process in the manufacture of them,—it would be diffi-
cult for any of these partners afterwards to restrain him from using any
knowledge so acquired or any secret so disclosed. They would, I think, in
such a state of circumstances, be considered to have waived any right to
preserve the secret for their separate benefit. The defendant admits that
the secret was communicated to him by Thomas Moat. His allegation that he
acquired a knowledge of it by acting as partner in the concern is disproved;
and it is shown that, if he did acquire such knowledge, he did so surreptitious-
ly. It was clearly a breach of faith and of contract on the part of Thomas to
communicate the secret."

It was not disputed that James Morison was the inventor and
the sole depositary of the secret in question.   Lord Cramuth ob-
served that:

"There is no doubt whatever that where a party who has a secret in a trade
employs persons under contract, express or implied, or under duty, express
or implied, those persons cannot gain the knowledge of that secret, and then
set it up against their employer."

This is a very comprehensive statement, indeed, and is cited by
plaintiff's counsel, and relied upon as sustaining his position; but it
is mere dictum, and must necessarily be limited to the facts and cir-
cumstances presented for decision.

In Fralich v. Despar, 165 Pa. St. 24, 30 Atl. 521, the employé, in
consideration of an increase of wages, agreed not to reveal the se-
crets of his employer's trade, which were revealed and thoroughly ex-
plained to him; but, in violation thereof, he manufactured and sold
the product, and represented it to be the same axle grease manu-
factured by the plaintiff.

In Peabody v. Norfolk, 98 Mass. 452, the case came up on demur-
rer, and all the allegations of the bill were admitted, viz.:   That the

invention and process was a secret, and was confidentially imparted to him; that the salary was a part consideration of the agreement not to disclose the secret; and that there was "a violation of contract and breach of confidence."

So, also, in Hammer v. Barnes, 26 How. Prac. 174, cited by appellant's counsel, all the allegations of the complaint were admitted by the answer.

The general doctrine is well stated in Watkins v. Landon (Minn.) 54 N. W. 193, that any person lawfully acquiring a knowledge of the composition of any article not patented has the legal right to manufacture and sell the same if, by reason of the manner in which such knowledge is acquired, that would not constitute a breach of confidence or good faith.

In Chadwick v. Covell, 151 Mass. 190, 23 N. E. 1068, the court observed that:

"Dr. Spencer had no exclusive right to the use of his formulas. His only right was to prevent any one from obtaining or using them through a breach of trust or confidence. Any one who comes honestly to the knowledge of them could use them, without Dr. Spencer's permission, and against his will."

The court in Tabor v. Hoffman, 41 Hun, 5, says:

"The courts have uniformly restrained all persons in his employ who necessarily become possessed of the formula in the manufacture of the medicine or the article from subsequently engaging in its manufacture, or from imparting it to others."

This is an extrajudicial utterance, not required by the facts of the case. The statement is not strictly accurate. It is too broad, and it is not warranted by any judicial decision that has come to my notice. The element of secrecy on the part of the employer, and the existence of a confidential employment and a breach of trust or confidence, are eliminated. Upon appeal (118 N. Y. 30, 23 N. E. 12), the court said that:

"Because this discovery may be possible by fair means, it would not justify a discovery by unfair means, such as the bribery of a clerk, who, in the course of his employment, had aided in compounding the mixture, and had thus become familiar with the formula."

There was no relation of master and servant in this case. Still, it cannot be true, as a general proposition, that the knowledge acquired by an employé in the course of manufacture, or in assisting the employer in experimental investigations, is acquired by unfair means.

In Baldwin v. Von Micheroux, 5 Misc. Rep. 387, 25 N. Y. Supp. 857, the employé invented certain compounds for flavoring tobacco with materials furnished by the firm, with the understanding that the processes by which such substances were concocted should belong to the firm, and remain trade secrets, and it was held that the firm became owner and proprietor of such processes. It was remarked that, if the employé had not been engaged to make the inventions, the firm would not have acquired any ownership therein. To this effect, also, is Hapgood v. Hewitt, 119 U. S. 233, 7 Sup. Ct. 193; Id., 11 Biss. 184, 11 Fed. 422.

In Kodak Co. v. Reichenbach, 79 Hun, 192, 29 N. Y. Supp. 1143, the defendants were expert chemists, employed at large salaries; and it was agreed in writing that they should assign to plaintiff all inventions, discoveries, and improvements in photography which they might make, discover, or invent. There was also evidence to the effect that they should regard their relations as strictly confidential, and should not disclose or make improper use of any secrets of the business. This case is relied upon by plaintiff as establishing the doctrine applicable to the case at bar. The conditions existing in the case last cited are entirely wanting in the one under consideration. In the former there was an agreement in writing that the employés should receive large salaries, and, in consideration thereof, should assign to the employer the results of their labors. The employés were expert chemists, and capable of protecting their interests and appreciating fully the obligations and covenants made when they entered the employment. In the case at bar there was no written contract. There is no evidence showing, or tending to show, that Gallus and Bostwick ever agreed, or that it was understood by this plaintiff, that they should not in the future use for their own benefit the information gained by them in the course of their employment while they were endeavoring to learn a business which should enable them in the future to earn their livelihood. There was no extra compensation for the extra obligation which plaintiff claims rested upon them. There is nothing in the evidence showing that this obligation of refraining from themselves using the knowledge acquired in their employment was pressed upon them, or that plaintiff considered them so obligated.

In Bristol v. Society, 132 N. Y. 267, 30 N. E. 506, the court uses this language:

"Without denying that there may be property in an idea, a trade, secret, or system, it is obvious that its originator or projector must himself protect it from escape or disclosure. If it cannot be sold or negotiated, or used without a disclosure, it would seem proper that some contract should guard or regulate the disclosure; otherwise, it must follow the law of ideas, and become the acquisition of whoever receives it,"—citing Peabody v. Norfolk, 98 Mass. 452.

It is evident from these decisions that it cannot be laid down as a general rule or doctrine of law that every employé impliedly agrees, even without any special consideration, to keep secret the knowledge of the processes of manufacture that he may acquire in the usual and ordinary course of his employment, and to abstain from putting this knowledge to such practical uses and purposes as he may see fit, for his own benefit or advantage, in opposition to his employer, and to his prejudice.

The remedy here sought is an injunction perpetually restraining these defendants from carrying on the business in which they are now engaged, and from employing the experience and knowledge gained by years of labor. It is an important remedy, and the evidence that plaintiff is entitled to it should be clear and satisfactory. The chief subject in respect to which an injunction is asked is the formulas of plaintiff. There is no definite evidence showing what those formulas are, nor what are the particular formulas in use by

defendants; so that the court is unable to ascertain and determine with any clearness or satisfaction to itself whether they are identical, or to what extent or in what particulars they may agree. If the process and formulas are not clearly and definitely disclosed, how can the court ascertain whether there is any infringement? How could it enforce an injunction upon such evidence?

An injunction is granted only where the rights sought to be protected are clear, or, at least, free from reasonable doubt.` Snowden v. Noah, Hopk. Ch. 347. It is not to be granted where the legal right is disputed, and is doubtful. Manufacturing Co. v. Spear, 2 Sandf. 599; Wolfe v. Goulard, 18 How. Prac. 64; Corwin v. Daly, 7 Bosw. 222. An injunction was refused because it appeared that the contract was not fair and equal, and the court could not ascertain whether it had been performed, because it related to the use of a secret process of manufacture. Barnes v. McAllister, 18 How. Prac. 534. Injunctions are not to be granted except with great caution, and in cases where the right and necessity are clear. Roberts v. Mathews, 18 Abb. Prac. 199. The court, in granting the injunction, must not do irreparable injury to the other party, nor create a greater wrong than it was intended to remedy. McSorley v. Gomprecht (Super. N. Y.) 26 N. Y. Supp. 917.

The evidence, circumstances, and conditions here presented fail, under the established rules, to entitle this plaintiff to an injunction.

There is, however, another objection to granting the relief demanded by plaintiff. It appears that defendants Gallus and Bostwick were under the legal disability of infancy when they entered plaintiff's employ; that Bostwick's disability continued to the time of his discharge, and Gallus was in his twenty-second year when his employment ceased, after having served the plaintiff for a period of eight years. Assuming that these defendants, or one of them, as plaintiff testifies, expressly agreed to keep secret what he might learn or be taught in the business of manufacturing or in assisting in making experimental investigations, is such a contract enforceable either at law or in equity? Upon what principle of law or doctrine of equity may an infant be enjoined from using the knowledge he may have acquired in his master's business? From using the fruits of his industry or the results of his intelligence and observation gained in a mechanical art? Such a contract would be highly prejudicial, oppressive, and unjust to the infant. An infant is incapable of depriving himself of using or applying the knowledge of the art or manufacture he may honestly and fairly acquire in the course of his employment, even though it may result in injury to his employer. He cannot contract not to compete with his employer in the same business. The knowledge he may have gained by the secret process or formula was a necessary incident of his employment. The law would not imply or infer such a contract on the part of an infant. The fact that Gallus continued in plaintiff's factory about nine months after he became of age does not amount to a ratification of the contract alleged, that he shall not disclose the secrets of manufacture acquired during infancy. It is beyond all reason for the court to infer or imply a contract of such a character as here

claimed on the part of these infants. The evidence is insufficient to warrant such a contract or agreement as claimed. All it amounts to is this: that a couple of boys, working for a manufacturer, are enjoined not to tell anything they may learn of the secrets of manufacture, the knowledge of which they may acquire in the performance of their work, and they answer that they will not. From this the court is requested to infer or presume that these infants contracted that they would not, after leaving or being discharged from their employer's service, disclose to any one the knowledge they gained by observation and experience in the business, or put it to practical uses for their own benefit or advantage. Such a promise, made by such youths, and upon such circumstances or conditions, may justly be restricted to the time of their service; and it would be unwarrantable to construe it as a contractual engagement not to enter into the business in opposition and to the prejudice of their employer. A promise of that character lacks one of the essential elements of a contract; there was no special consideration to support it. It would be going far, indeed, for the court to draw the contract inferentially or by presumption. Then, too, the defendants were discharged, and were they not therefore relieved from their promise? Were they rightfully discharged? Was the plaintiff under no obligation by reason of this contract? Was it for his advantage alone? So, it seems, the plaintiff construes it. Under this construction, no rights thereunder were secured to the other parties to that contract, but it inured solely to the benefit of the plaintiff. We do not consider such testimony, if believed, would be sufficient to warrant the finding of a contract, for it is improbable that there was any intention by either party to enter into a contract of the nature and to the extent here claimed. Nor would the court be justified in so finding as matter of fact. The supposed contract or agreement is of greater import and of larger scope than the simple promise of the boys not to tell. It is a rule of law that a matter arising ex contractu, though infected with fraud, cannot be changed into a tort in order to charge the infant, by a change in the remedy. The principle is that, where the action rests on promises, the plaintiff cannot, by changing the form of the action, make a person liable who would not have been liable on the promise. Thus, an action on the case cannot be maintained against an infant for false and fraudulent warranty of the unsoundness of a horse sold by him, nor for loss of goods through negligence as bailee. Campbell v. Perkins, 8 N. Y. 440. So, where an infant hires a horse, and an injury happens by reason of his unskillfulness, want of knowledge, discretion, and judgment, he is not liable upon the implied promise to use due care and skill, nor can he be held liable in tort. Campbell v. Stakes, 2 Wend. 137; Moore v. Eastman, 1 Hun, 578. "The alleged contract is the substantive ground of, or the inducement to, the cause of action; for, if there was no contract, then there could be no fraud in the making of it, and disproving the contract defeats the action. Therefore, as decided in all the cases above cited, infancy is a bar." See Hewitt v. Warren, 10 Hun, 560; and see Heath v. Mahoney, 7 Hun, 100.

In all the cases upon this subject, it will be found that the courts profess to hold infants liable for positive, substantial torts, but not for violations of contract merely, although, by construction, the party claiming redress may be allowed, by the general rules of pleading, to declare in tort or contract, at his election. An infant is liable in an action ex delicto for an actual and willful fraud only in cases in which the form of action did not suppose that a contract existed; but, where the gravamen of the fraud consisted in a transaction that really originated in contract, the plea of infancy is a good defense. See Nash v. Jewett (Vt.) 18 Atl. 47.

I do not believe it will ever be established law in this enlightened age and country that, under all the circumstances existing in this case, an employé, whether infant or adult, would not have a perfect legal right to put in writing all the information he may honestly and fairly acquire in the course of his employment in the matters he is employed to perform, so as to fix it in his memory, even to copy formulas, processes, and the measures and dimensions of appliances, so long as he does not in a surreptitious and clandestine manner possess himself of this knowledge. Certainly, upon the record here, a case has not been made that will justify the court in interfering with the business of these defendants, and enjoining them from further prosecution of the same.

The judgment should be affirmed, with costs.

WARD, J., concurs in dissenting opinion.