## Case No. 10,603.

### OSGOOD et al. v. ALLEN.

[1 Holmes. 185; 6 Am. Law T. Rep. U. S. Cts. 20; 7 Am. Law Rev. 568; 3 O. G. 124; 4 Cent. Law J. 282; Cox, Manual Trade-Mark Cas. 231.] [1]

Circuit Court, D. Maine. Nov., 1872.

COPYRIGHT—PROTECTION OF TITLE—TRADE-MARKS —INFRINGEMENT.

1. The title of a copyrighted publication, separate from the publication which it is used to des-

---

[1] [Reported by Jabez S. Holmes. Esq., and here reprinted by permission. 7 Am. Law Rev. 568; 4 Cent. Law J. 282; and Cox, Manual Trade-Mark Cas. 231,—contain only partial reports.]

ignate, is not within the protection of the copyright.

[Cited in Benn v. Le Clercq, Case No. 1,308; Donnelley v. Ivers, 18 Fed. 595.]

2. The office of a trade-mark is to point distinctively to the origin or ownership of the article to which it is affixed.

3. Where a trade-mark right is invaded. the essence of the wrong consists in the sale of the goods of one manufacturer or vender as those of another. It is only when this false representation is directly or indirectly made that relief is granted in equity.

[Cited in Amoskeag Manuf'g Co. v. Trainer, 101 U. S. 61.]

4. Where, in a suit in equity to restrain alleged infringement of a trade-mark right in the title of a publication, it did not appear whether or not the public was actually deceived. or in danger of being deceived, into buying the defendant's publication as that of the complainant, the cause was referred to a master, to ascertain and report whether such was the fact.

Bill in equity [by James R. Osgood and others against Edward C. Allen] for an injunction to restrain the defendant from the use of the words "Our Young Folks," as the title of a publication. The case was heard on an agreed statement of facts, the material parts of which were substantially as follows: The complainants, at the time of the acts of the defendant complained of, were, and for several years had been, the proprietors and publishers of a monthly magazine for the young, published at Boston, Mass., under the title "Our Young Folks;" each issue of which was duly copyrighted, and which had acquired a large circulation and a valuable reputation. The defendant advertised and published at Augusta, Me., a fortnightly paper under the title "Our Young Folks' Illustrated Paper," each issue of which was duly copyrighted. Before the publication of his paper, the defendant was notified by the complainants that they claimed the exclusive right to the title "Our Young Folks," and requested to withdraw the announcement of his publication, and refrain from the use of those words in its title; which the defendant declined to do, and published and sold large numbers of his paper. The two publications were in no respect similar, except in the use of the words "Our Young Folks" in the title of each.

R. M. Morse, Jr., and Richard Stone, Jr., for complainants.

I. The title of a book which is descriptive of its individuality, and indicates its character to the public, is within the protection of the copyright in the book. Curt. Copyr. pp. 293–298. The use of a title previously appropriated, and still used by another, is an injury to the person first adopting the title, and an injury for which there is no adequate remedy, except under the law of copyright. The principles of law applicable to trademarks and the good-will of trades do not in all cases afford effectual protection to the title of a work. In order to obtain the aid of a court of equity upon those principles, it is

necessary for a party to prove that he has derived profits from his publication. Id. 294. But in the case of a newly published work. no profits can be proved. And in the case of a work not yet given to the world, no amount of expenditure incurred upon it will give an exclusive right to the title. Turner, C. J., in Maxwell v. Hogg, 2 Ch. App. 307. Under the act of 1831 (4 Stat. 436), which is substantially the same as the act of 1870 (16 Stat. 198), it has been settled that periodicals are protected as books; that copyright includes the whole book, and every part of it; that quantity is, of itself, no test by which to determine whether a quotation amounts to a piracy; and the question in such cases is, whether the quotation tends to, or does in fact, injure the book from which the extract is taken. Curt. Copyr. 109, 238, 243, 244; Folsom v. Marsh [Case No. 4,901]; Story v. Holcombe [Id. 13,497]. The title of a book is a part of, or a necessary appendage to, the book, and, in the case of a periodical, is the most valuable part of it. In Bradbury v. Dickens, 27 Beav. 60, which was a case relating to the property in "Household Words," Sir John Romilly, master of .the rolls, declared that "the property in a literary periodical like this is confined purely to the mere title;" and the right to publish any periodical or other work under the title "Household Words" was sold by auction under a decree of the court, for £3,550. According to the decision in Jollie v. Jaques [Case No. 7,437], if the body of the book is not protected by the copyright, the title is not. It is equally true, that if the title is not protected by copyright, the body of the work will not receive the protection which the copyright acts seem to have intended. If the protection of copyright does not extend to the title, why should the time of copyright date from the time of recording the title? The author or proprietor can derive no benefit from the statute before publication which he did not possess before. Up to that time the common law furnishes him an ample remedy against piracy. Bartlette v. Crittenden [Id. 1,082]; Wheaton v. Peters, 8 Pet. 133 U. S.] 657. It was held in Roberts v. Myers [Case No. 11,906], that, after the title-page has been deposited, the author can maintain an action for infringement of his copyright, though the work may not have been published. In Maxwell v. Hogg, 2 Ch. App. 307, and Correspondent Newspaper Co. v. Saunders, 12 Law T. [N. S.] 540, it was held that the statute did not protect the title before publication, because by the English statute the time of copyright dates from the time of publication. Upon the same principle, it should be held that the acts of 1831 and 1870 protect the title, because the time of copyright under them dates from the time of recording the title.

II. The complainants have a right to the exclusive use of the name "Our Young Folks," as indicating a periodical, under the law of

trade-marks. Maxwell v. Hogg, 2 Ch. App. 307; Kelly v. Hutton, 3 Ch. App. 708; Clement v. Maddick, 1 Giff. 98; Lee v. Haley, 5 Ch. App. 155; Bell v. Locke, 8 Paige, 75; Snowden v. Noah, Hopk. Ch. 354; Matsell v. Flanagan, 2 Abb. Pr. (N. S.) 459; Hogg v. Kirby, 8 Ves. 215; 2 Story, Eq. Jur. § 951; Spottiswoode v. Clarke, 2 Phil. Ch. 154; Crucible Co. v. Guggenheim, 3 Am. L. J. & R. 293, and cases cited. The defendant's use of the words "Our Young Folks" is an infringement of the complainants' right. His publication is intended to supply the same demand as theirs. It will be known to its readers and to the trade by the same name. The public will be deceived, and the complainants injured. Seixo v. Provezende, 1 Ch. App. 197; Croft v. Day, 7 Beav. 89. The defendant admits in his letter that "the names might, in some cases, be confounded," and claims that his publication will be a benefit instead of an injury to the complainants, because, as he says, "your publication has but a small circulation compared to that which ours will have, and therefore * * * ours will be an advertisement for yours." That is, the defendant will advertise the complainants, or the complainants will advertise the defendant; and in either case the public are to be deceived. The complainants' right to maintain this bill does not depend on the innocence of the defendant in using the complainants' title. Hall v. Barrows, 33 Law J. Ch. 204; Pasley v. Freeman, 2 Smith, Lead. Cas. Eq. 92; Clement v. Maddick, 1 Giff. 98; Millington v. Fox, 3 Mylne & C. 338.

Causten Browne, Jabez S. Holmes, and A. A. Strout, for defendant.

I. There is no copyright in the title of the complainants' publication. The copyright act contemplates no copyright in any thing but the book, and regards the title only as a designation of the book. It is merely a name for the copyrighted publication, and the only exclusive right which the author or proprietor has in it is as a title to that particular work. The title differs from the literary composition which is the subject of copyright in the fundamental characteristic of such composition: it need not be original. Its sole literary merit is in its appropriateness. It may be, often is, a quotation. In Cruttwell v. Lye, 17 Ves. 335, and Maxwell v. Hogg, 2 Ch. App. 305, the court intimated strongly the opinion that there could be no copyright in a title. See, also, Jollie v. Jaques [supra]. If, then, the complainants have any exclusive copyright in the words "Our Young Folks," it is as a part of their publication. But the use of those three words in the defendant's publication would not be an infringement of complainants' copyright in their magazine. It has never been held that the use of three words is an infringement of a copyright in a previous publication which contains them.

II. The complainants allege infringement of an exclusive right in the title "Our Young Folks" as a trade-mark. The fundamental principle of the law of trade-mark is, that no manufacturer or proprietor has a right to sell his goods as those of another. Hogg v. Kirby, 8 Ves. 214; Cruttwell v. Lye, 17 Ves. 335; Knott v. Morgan, 2 Keen, 213; Spottiswoode v. Clark, 10 Jur. 1043; Sykes v. Sykes, 3 Barn. & C. 541; Rodgers v. Nowill, 5 Man. G. & S. 109; Burgess v. Burgess, 17 Jur. 292; Perry v. Truefitt, 6 Beav. 66; Leather Cloth Co. v. American Leather Cloth Co., 11 Jur. [N. S.] 513; Stokes v. Landgraff, 17 Barb. 608; Howard v. Henriques, 3 Sandf. 725; Fetridge v. Wells, 4 Abb. Pr. 144; Taylor v. Carpenter [Case No. 13,784]; Marsh v. Billings, 7 Cush. 322; Coats v. Holbrook, 2 Sandf. Ch. 586; Partridge v. Menck, Id. 622, 2 Barb. Ch. 101, 1 How. App. 558; Delaware & H. Canal Co. v. Clark [Case No. 3,764]; Snowden v. Noah, Hopk. Ch. 347; Bell v. Locke, 8 Paige, 74. The question, in all cases where an infringement of the right is alleged, is whether the defendant has so appropriated or simulated the plaintiff's mark that the public has been deceived into buying the defendant's goods as those of the plaintiff, or is likely to be. The plaintiff cannot claim an abstract right in his mark, whenever and however used. It must be used by the defendant in such association as to deceive the public. If the plaintiff's mark in itself designates the true origin of the goods to which he has applied it, and the defendant has actually used it, that is in itself the fraudulent misrepresentation. But if the mark is not in itself indicative of the origin of the goods to which the plaintiff has affixed it, many considerations are to be taken into account in determining the question of infringement. The defendant must have simulated the mark of the plaintiff, so that the public will naturally mistake the one for the other. Leather Cloth Co. v. American Leather Cloth Co., 11 Jur. (N. S.) 513; Croft v. Day, 7 Beav. 84; Crawshay v. Thompson, 4 Man. & G. 357; Seixo v. Provezende, 1 Ch. App. 192; Cocks v. Chandler, L. R. 11 Eq. 446; Welch v. Knott, 4 Kay & J. 747; Amoskeag Manuf'g Co. v. Spear, 2 Sandf. 599; Swift v. Dey, 4 Rob. [N. Y.] 611; Partridge v. Menck, 2 Sandf. Ch. 622; Amoskeag Manuf'g Co. v. Garner, 55 Barb. 151. And the resemblance must be such as to deceive a person using due caution. He must have used the mark upon goods of the same kind as those upon which the plaintiff has used it. Cases above cited. If the use of the thing to which the plaintiff has affixed his mark, or in which he has acquired a good-will, is from its nature necessarily local, the defendant's use must be in the same place. Howard v. Henriques, 3 Sandf. 725; Corwin v. Daly, 7 Bosw. 222; Marsh v. Billings, 7 Cush. 322; Christy v. Murphy, 12 How. Prac. 77; Knott v. Morgan, 2 Keen, 213. The cases directly involving an exclusive right in the title of a

periodical affirm the same principles. Colladay v. Baird, 4 Phila. 139; Emerson v. Badger, 101 Mass. 82; Spottiswoode v. Clark, 10 Jur. 1043; Bell v. Locke, 8 Paige, 75; Snowden v. Noah, Hopk. Ch. 347; Matsell v. Flanagan, 2 Abb. Pr. (N. S.) 459; Stephens v. De Couto, 4 Abb. Pr. (N. S.) 47. The doctrine of the case of McAndrew v. Bassett, 10 Law J. (N. S.) 445, approved in Maxwell v. Hogg, may fairly be construed so as to be in accordance with the cases already cited and the principles upon which they rest. In this case there is no simulation of the complainants' title. The two publications are entirely dissimilar. Deception or misleading of the public into buying the defendant's as that of the complainants is not only improbable, but almost impossible. The law presumes that a purchaser exercises some caution. No actual misleading of the public is pretended.

SHEPLEY, Circuit Judge. The complainants are the proprietors and publishers of an illustrated magazine for boys and girls, entitled "Our Young Folks," which has been published monthly, in the city of Boston, under the same title, since December, 1864. Previous to the publication of the first number, the publishers duly entered the title of their magazine for securing the copyright thereof. The publication and sale have been continued in regular monthly numbers by the firm of Ticknor & Fields and their successors, including the complainants; and the copyright of each number was taken out and secured according to law, previous to its publication. Complainants allege, that, when the copyright of the first number was taken out, the title "Our Young Folks" had not been adopted, and was not in use for any other similar publication, and has not been used for any similar publication since, except by the defendant; that they have expended large sums of money in publishing and selling the same; that, by reason of their expenditure, and the care and skill by them bestowed, the magazine has acquired an extensive and valuable reputation throughout the United States and elsewhere as a publication for young people, under the title of "Our Young Folks," and was a source of profit to complainants.

The defendant, a publisher at Augusta, Me., announced, by advertisements and otherwise, that he would publish, on the first and fifteenth days of each month, commencing October 1, 1871, an illustrated publication for young people, under the title "Our Young Folks' Illustrated Paper." It is admitted that he accordingly did issue a very large edition of his illustrated publication, a copy of which is filed with the proofs in the case; and that, upon demand by the complainants before publication, he refused, and still refuses, to withdraw the announcement of the publication, or to change the title, and has published and sold large numbers under said title.

The complainants claim that they are entitled to a remedy under the law of copyright, and also that they have a right to the exclusive use of the name "Our Young Folks," as indicating a periodical, according to the doctrine of trade-marks as applied to the protection of literary publications. It is apparent upon inspection, and not disputed, that the publications of the complainants and the defendant are in no respect the same, or even similar, except in the use by both of the words "Our Young Folks" as a part of the title. The title of the one on the title-page is, "Our Young Folks: an Illustrated Magazine for Boys and Girls;" of the other, "Our Young Folks' Illustrated Paper." Both are illustrated periodicals for the young. The reading matter and the illustrations are not the same, or similar.

Copyright laws are designed for the encouragement of learning, by securing to authors and their representatives the exclusive right to the publication of their literary compositions, as patent laws secure to inventors certain exclusive rights in their discoveries. The constitution conferred upon congress the power to promote the progress of science and the useful arts "by securing, for limited times, to authors and inventors the exclusive rights to their respective writings and discoveries." Accordingly, in 1790 [1 Stat. 124], congress passed an act for the encouragement of learning, by securing the copies of maps, charts, and books to the authors and proprietors of such copies, during the times therein mentioned. This act provided, that the author and authors of any map, chart, book, or books "shall have the sole right and liberty of printing, reprinting, publishing, and vending such map, chart, book, or books, for fourteen years from the time of recording the title thereof." The remedy provided by this statute was a right of action given to the proprietor of the copyright, against any person who, without his consent, should publish, sell, or expose to sale, or cause to be published, sold, or exposed to sale, any copy of such map, chart, book, or books.

The act of 1870, "to revise, consolidate, and amend the statutes relating to patents and copyrights," provides, that the author or proprietors of any books, &c., shall, upon complying with the provisions of this act, have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing, and vending the same. The nineteenth section provides, that no person shall be entitled to the benefit of the act unless he shall, before publication, deposit in the mail, for the librarian of congress, a printed copy of the title of such book, and shall, within ten days after publication, mail to the librarian two copies of such copyright book. The remedy of the author or proprietor under this statute is against the person who, without the consent in writing of the proprietor of the copyright, shall print, publish, or import, or, knowing the same to be so print-

ed. published, or imported. shall sell or expose to sale, any copy of such book.

By the plain terms of the statute, the copyright protected is the copyright in "the book," the word "book" being used to describe any literary composition. Although a printed copy of the title of such book is required, before the publication, to be sent to the librarian of congress, yet this is only as a designation of the book to be copyrighted; and the right is not perfected under the statute until the required copies of such copyright book are, after publication, also sent. It is only as a part of the book, and as the title to that particular literary composition, that the title is embraced within the provision of the act. It may possibly be necessary in some cases, in order to protect the copyrighted literary composition, for courts to secure the title from piracy, as well as the other productions of the mind of the author in the book. The right secured by the act, however, is the property in the literary composition,—the product of the mind and genius of the author, and not in the name or title given to it. The title does not necessarily involve any literary composition; it may not be, and certainly the statute does not require that it should be, the product of the author's mind. It is not necessary that it should be novel or original. It is a mere appendage, which only identifies, and frequently does not in any way describe, the literary composition itself, or represent its character. By publishing, in accordance with the requirements of the copyright law, a book under the title of the life of any distinguished statesman, jurist, or author, the publisher could not prevent any other author from publishing an entirely different and original biography under the same title. When the title itself is original, and the product of the author's own mind, and is appropriated by the infringement, as well as the whole, or a part of, the literary composition itself, in protecting the other portions of the literary composition, courts would probably also protect the title. But no case can be found, either in England or this country, in which, under the law of copyright, courts have protected the title alone, separate from the book which it is used to designate. In Jollie v. Jaques [supra], Mr. Justice Nelson says, "The title or name is an appendage to the book or piece of music for which the copyright is taken out, and if the latter fails to be protected, the title goes with it as certainly as the principal carries with it the incident." The only doubt expressed by Mr. Justice Nelson in that case is as to how the question might be decided in case of a valid copyright of a book and an infringement of the title by the defendant. While expressing no opinion upon this question, the reasoning by which he arrives at the conclusion, that when the book fails to be protected the title goes with it, would seem clearly to point to a similar result in a case of alleged infringement

of copyright of the book; namely, that if there was no piracy of the copyrighted book, there could be no remedy under the act for the use of a title which could not be copyrighted independently of the book. The injunction granted in the case of Hogg v. Kirby, 8 Ves. 215, was not founded on copyright, but on the power a court of equity has to restrain one person from carrying on a trade, or from publishing a work, under a fraudulent representation that such trade or work is that of another. The chancellor (Lord Eldon), in the opinion in that case, says, "In this case, protesting against the argument, that a man is not at liberty to do any thing which affects the sale of another work of this kind, and that because the sale is affected therefore there is an injury (for if there is a fair competition by another original work really new, be the loss what it may, there is no damage or injury), I shall state the question to be, not whether this work is the same, but, in a question between these parties, whether the defendant has not represented it to be the same; and whether the injury to the plaintiff is not as great, and the loss accruing ought not to be regarded in equity upon the same principles between them, as if it was in fact the same work. Upon the point whether the work was in fact meant to be represented to the public as the same, I do not say that it is not a question proper for a jury." In the case of Jollie v. Jaques, Mr. Justice Nelson declined to consider the question whether the court will interfere to prevent the use of a title in fraud of the plaintiff, upon principles relating to the good-will of trades, because, in the case before him, both parties were residents, and, for aught that appeared in the case, citizens, of New York; and, therefore, independently of copyright, the court had no jurisdiction in the case.

In the case before this court, the bill is filed by complainants as citizens of the commonwealth of Massachusetts, against the defendant, a citizen of Maine. Relief is sought not only under the law of copyright, but upon the general ground of equity, as related to the good-will of trades and the doctrine of trade-marks. It becomes necessary for the court to determine, in this case, how far the complainants are entitled to a remedy, upon these grounds of equity jurisdiction, and upon the general principles governing courts of equity jurisdiction. Property in the use of a trade-mark or name has very little analogy to that which exists in copyrights or patents for inventions. In all cases where rights to the exclusive use of a trade-mark are invaded, the essence of the wrong consists in the sale of the goods of one manufacturer or vender as those of another. It is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief. Delaware & H. Canal Co. v. Clark, 13 Wall. [80 U. S.] 311, 322. Words or devices may be adopted

as trade-marks, which are not original inventions of the one who adopts and uses them. Words in common use may be adopted, if, at the time of adoption, they were not used to designate the same or similar articles of production. A generic name, or a name merely descriptive of an article of trade, or its qualities or ingredients, cannot be adopted as a trade-mark, so as to give a right to the exclusive use of it. The office of a trade-mark is to point distinctively to the origin or ownership of the article to which it is affixed. Marks which only indicate the names or qualities of products cannot become the subjects of exclusive use, for, from the nature of the case, any other producer may employ, with equal truth and the same right, the same marks for like products. Geographical names, which point out only the place of production, and not the producer, cannot be appropriated exclusively, so as to prevent others from using them and selling articles produced in the districts they describe under these appellations. In the case of Brooklyn White-Lead Co. v. Masury, 25 Barb. 416, the court said, that, as both plaintiff and defendant dealt in the same article, and both manufactured it at Brooklyn, each had the same right to describe it as "Brooklyn White Lead." Lord Langdale, master of the rolls, well expresses the whole law of trade-marks by names, in the case of Collins Co. v. Cowen, 3 Kay & J. 428. He says: "There is no such thing as property in a trade-mark as an abstract name. It is the right which a person has to use a certain name for articles which he has manufactured, so that he may prevent another person from using it, because the mark or name denotes that articles so marked were manufactured by a certain person, and no one else can have the right to put the same name upon his goods, and then represent them to have been manufactured by the person whose mark it is."

Applying these principles to the case before the court, the question presented on this branch of the case is, whether the defendant has so simulated the mark of the complainant as to deceive the public, so that the public will naturally mistake his publication for that of the complainant.

Complainants aver that defendant, fraudulently designing to procure the custom and trade of persons who are in the habit of buying their magazine, and to induce them and the public to believe that his publication is in fact the complainants', and in order to obtain for himself the benefit of the reputation of complainants' publication, advertises, prints, and offers for sale, his publication under that title; and allege that the public will be deceived by the title, and led to purchase defendant's publication under the belief that it is the magazine of the complainants. The agreed statement of facts is silent on the question whether the public are deceived, or are in danger of being deceived,

as alleged; and whether the customers of the complainants or the public are induced to believe, or are in danger of being induced to believe, that defendant's publication is in fact the complainants', and thereby led to purchase the defendant's magazine under the belief that it is the complainants'.

The case will therefore be referred to a master to ascertain and report the fact upon the foregoing questions to the court; and further proceedings in the case will be stayed until the coming in of the master's report.