WILLIAM WIRTZ

*v.*

THE EAGLE BOTTLING COMPANY.

1. The leading principle of the law of trade-marks is, that no dealer shall be permitted to sell his goods on the reputation which another dealer has established in the market for his goods.

2. The law protects labels for the same reasons and in precisely the same way that it protects trade-marks.

3. No dealer can lawfully adopt the label of another dealer, or one so near like it as to lead the public to suppose that the article to which it is affixed was put upon the market by such other dealer.

Wirtz v. Eagle Bottling Co.

4. The legal quality of an act, resulting in injury, must be decided not by the motive with which it was done, but by the consequences which have necessarily resulted from it.

5. A person, seeking protection against an infringement of his label, is not required to prove fraud, nor that purchasers have been deceived and have purchased his adversary's goods under the belief that they were his. A sufficient case to entitle him to protection will be made if he shows that the resemblance between the counterfeit and the genuine is so close that it is probable purchasers, in buying, will mistake one for the other.

6. Where the similarity between the genuine and the counterfeit is close enough to convey a false impression to the public mind, and is of a character to deceive ordinary purchasers, buying with the care usually exercised in such transactions, there the similitude is sufficient to entitle the complaining party to protection.

7. In a suit where the question is, whether one label is a fraudulent simulation of another, the labels themselves furnish, as a general rule, the very best evidence of which the case is susceptible.

On application for an injunction, heard on bill and affidavits on the part of the complainant and on affidavits on the part of the defendant.

*Mr. John O. H. Pitney,* for the complainant.

*Mr. William H. Corbin,* for the defendant.

VAN FLEET, V. C.

The complainant is engaged in the business of bottling and selling beer and ale, and has been so engaged for more than ten years past. He carries on his business in this way : He purchases liquors in bulk, in barrels and casks, and then draws it off into bottles, and the liquor, thus prepared for sale to consumers, is sold to retail dealers, who sell it by the bottle to consumers. As is obvious, the success of such a business depends entirely upon the quality of the liquor which the person who conducts it puts upon the market. To make his business a success, it is indispensable that he should be a good judge of the quality of such liquors, and that he should make his purchases with skill and care, and then prepare and put his liquors upon the market in such condition as to be attractive to consumers. The complain-

ant shows that he has carried on his business in this way, and that by reason of the skill and care he has bestowed upon it, and the upright manner in which he has conducted it, his liquors have become well known in the market and popular with consumers, and have, in consequence, been sold in large quantities, at high prices. To distinguish his liquors from those of the same kinds put upon the market by other bottlers the complainant, several years ago, invented or designed three labels, which he has since used to distinguish his goods. His liquors are known to the public by these labels. They are the sign or symbol by which his liquors are known in the market. If we speak with accuracy, these labels cannot be called trade-marks, but they serve substantially the same purpose. They are the marks by which the complainant's goods are distinguished in the market from all like goods put upon the market by other persons, and are, for that reason, according to many decisions, just as much under the protection of the law as trade-marks are. The law protects them for the same reasons and in precisely the same way that it does trade-marks. The leading principle of the law on this subject is, that no man should be permitted to sell his goods on the reputation which another dealer has established in the market for his goods, and this principle applies with equal force to the case where the goods of such other dealer are known in the market by a label as it does to the case where they are known by a mark which is strictly a trade-mark. No dealer can lawfully adopt the label of another dealer, or one so near like it as to lead the public to suppose that the article to which it is affixed was put upon the market by such other dealer. *Miller Tobacco Manufactory* v. *Commerce, 16 Vr. 18, 24.* The reasons upon which this rule rests were stated by Mr. Justice Knapp, in the case just cited, substantially as follows: While the markets are open and free to all, and fair competition should be encouraged, still every dealer must be required, for the protection of the public and to promote fair dealing, to depend for his success upon his own reputation and the quality of his own productions. If he were allowed to deal under false colors and sell his productions for those of others, the result would be that he would not only cheat

Wirtz v. Eagle Bottling Co.

the public, but also defraud him whose right place in the market he filled with spurious goods. Such competition would not be fair competition—it would be closer akin to piracy.

The complainant charges the defendant with having counterfeited his labels. As its name indicates, the defendant is engaged in the same business that the complainant carries on. It is his rival. It was organized as a corporation on the 2d day of February, 1892. One of its incorporators was a person who, for several years prior to the defendant's organization, had been in the complainant's employ, and was, in consequence, familiar with his labels, and knew all about the character and extent of his business and the names of his customers. This person, since the defendant's organization, has been its general manager and treasurer. The complainant is before the court asking for an injunction. The ground upon which he puts his right to this process is, that the defendant is selling beer and ale on the market, in bottles, with labels thereon which are imitations of his, and which so closely resemble his as to deceive the public and induce consumers to buy the defendant's liquors under the belief that they are the complainant's.

The defendant's labels were prepared under the direction of its general manager. He had left the complainant's employ just before he gave the direction. He was thoroughly familiar with the complainant's labels and also with the reputation which his liquors had acquired in the market. He knew that the complainant's liquors were being constantly sold on the market, in large quantities, marked with his distinctive marks. In having the defendant's labels prepared, he says he gave no directions that the complainant's labels should be imitated, nor that any attempt should be made to do so. He further says, that in designing the defendant's labels he had no purpose or design of palming off the defendant's goods for those of the complainant. Admitting all this to be true, it is manifest it constitutes no defence. The vital question in cases of this kind is not what did the defendant mean, but what has he done? The legal quality of an act, resulting in injury, must be decided not by the motive with which it was done, but by the consequences which have necessarily re-

sulted from it.   The law, in civil cases, does not attempt to pene-
trate the secret motive which induced the act brought in judgment,
but judges of its legal quality solely by the consequences which
have actually and necessarily proceeded from it.   It is no less a
dictate of justice, than of sound reason, that every person must be
understood to have intended to do just what is the natural conse-
quence of his act deliberately done.

The aggrieved person, in cases of this class, is not required to
show intentional fraud, but he makes a sufficient case to give him
a right to protection when he shows that the defendant is using
his label, or one so nearly like it as to render deception of public
and injury to himself probable.   *Miller Tobacco Manufactory* v.
*Commerce, supra.*   Neither is he required to prove that persons
have actually been deceived, and that his adversary's goods have
been purchased under the belief that they were his.   If it appears
that the resemblance between the two labels is such that it is
probable, in the sale of the goods of the parties, the one will be
mistaken for the other, enough is shown to make it the duty of
the court to interfere.   *Edelsten* v. *Edelsten, 1 De G., J. & S. 185,
200.*   As was said by Mr. Justice Clifford, in *McLean* v. *Flem-
ing, 96 U. S. 245*—a case in which all the principles pertinent
to the case in hand were stated with great clearness and fullness—
no rule, as to what degree of similarity must exist in order to
constitute an infringement, can be laid down which may be ap-
plied to all cases.   All that can be done in that regard is to say,
that where the similarity is sufficient to convey a false impression
to the public mind, and is of a character to deceive the ordinary
purchaser, buying with the caution usually exercised in such
transactions, there sufficient ground exists to entitle the injured
person to redress.   There are cases which lay down a more liberal
rule in favor of persons claiming protection, and declare that if
the resemblance is only such as is calculated to deceive the care-
less and unwary, a sufficient degree of similarity will exist to
justify the court in interdicting the use of the counterfeit.   *Mc-
Cann* v. *Anthony, 3 West. Rep. 436* (reported also in *Price &
Stew. Am. T. M. Cas. 1061*), and *Colman* v. *Crump, 70 N. Y. 573,
578,* are cases of this class.

Wirtz v. Eagle Bottling Co.

For the purposes of this case, the rule laid down and enforced in *McLean* v. *Fleming, supra,* will be adopted as the true one. That declares that exact similitude is not required; in other words, that the counterfeit need not be a *fac similie* of the genu-ine, but that if the counterfeit so closely resembles the genuine as to mislead ordinary purchasers, buying with the care usually exercised in such transactions, the use of the counterfeit should be prohibited. An important part of this rule, as it applies to this case, is that clause of it which directs that, in determining whether the counterfeit so closely resembles the genuine as to be likely to deceive the ordinary buyer, the court must take into consideration the degree of care which buyers usually exercise in buying such an article as that which is the subject of the distin-guishing mark; for it is a matter of common knowledge that the ordinary buyer does not, as a general rule, exercise as much caution in buying an article for which he pays a few pennies as he does in purchasing a more valuable thing. The instances are very rare, I suppose, where a purchaser exercises as much care in buying a bottle of beer as he does in buying a bottle of whiskey, a box of cigars, or a hat or a coat.

Tested by the rule above stated, it seems to me to be entirely clear, that the defendant's labels must be pronounced unlawful imitations of those of the complainant. Indeed, so close is their resemblance to those of the complainant, especially in their general characteristics and appearance, that, were it not for the oath of the defendant's manager, I think it would be impossible to be-lieve that they were not designed with the intent to simulate those of the complainant. They are of exactly the same size, their colors throughout are the same, the words descriptive of the goods are the same, and they are arranged in precisely the same manner, printed with letters of the same form and size, and in ink of the same colors, and the one ornamented with arabesque work is almost an exact copy, in that respect, of the complain-ant's. There are differences, of course, but the points in which the defendant's differ from those of the complainant are slight and merely colorable. In their attractive features and prominent characteristics the two sets of labels have the same general ap-

pearance, and so closely resemble each other that, to the eye of the ordinary observer, the one may be easily mistaken for the other. The differences are so slight as not to be discoverable at a glance, but to require an effort by attention or observation. Where, as in this case, the subject-matter of the controversy is labels, and the question is, whether one is a fraudulent simulation of the other, the decision must always, to a large extent, be controlled by the evidence furnished by the labels themselves. As a general rule, they constitute the very best evidence of which the case is susceptible. That is the case here. A comparison of these labels, whether made singly or in a group, shows conclusively, as I think, that the use of the defendant's labels constitutes a plain violation of the complainant's right. It is difficult to believe that one set of labels could have been made so near an exact copy, in all their special characteristics, of another set without an effort at simulation. An injunction will be granted.

A corporation, organized under the name of P. Ballantine & Sons, has also brought an action against the defendant for a like cause of action. An injunction is applied for in that case. The two applications were heard together. The two actions rest on substantially the same foundation. The same principles must control their decision. While the wrong committed in the latter case is not so great, nor quite so glaring, as it is in the first, still it clearly appears that the defendant has invaded the complainant's right. An injunction will also be granted in this case.