This litigation is between owners of two afternoon newspapers published in Jersey City, and the object of the bill is to restrain unfair competition.
The "Jersey Journal" is an old-established, prosperous newspaper, and the "Jersey Observer," lately the "Hudson *Page 55 
Observer" and formerly the "Hoboken Observer," is of no less standing and success. They have about the same circulation and in the same territory, in Hudson county and New York City, at the tubes, railroad stations and ferries. The "Jersey Journal" is popularly known as the "Jersey," so dubbed by the public after the "New York Evening Journal" came into prominence some years ago. Its title was at that time changed from "Evening Journal" to "Jersey Journal," to distinguish it from that newspaper. The "Jersey Observer" is popularly known as the "Observer." The owner of the "Jersey Journal" objects to the use of the prefix "Jersey" by the "Observer," which the latter recently adopted, claiming that "Jersey" is a valuable asset in the publication and circulation of its newspaper, and charging that the sole intent of the owner of the "Observer" in changing "the name of its newspaper from that of `Hudson Observer' to `Jersey Observer' is for the purpose of defrauding complainant and the public, and with the deliberate intent to mislead, defraud and deceive the public into believing that it was purchasing the newspaper of complainant instead of the newspaper of the defendant, and for the deliberate and sole purpose of, and the putting into execution of, a plan, design or scheme to cut and curtail the circulation of the newspaper published by complainant, to defraud and mislead and deceive the public, and to induce the public to believe when they ask for the `Jersey' into buying the newspaper of the defendant instead of the newspaper of complainant, and to injure and curtail the circulation of complainant's newspaper."
A geographical name is not the subject of exclusive appropriation, but an established trade of which it is the badge, will be protected against unfair competition by the use of the name. VanHorn v. Coogan, 52 N.J. Eq. 380. If such a name so used as a badge of trade be taken by another with intent to mislead the public to the injury of the complainant, equity will enjoin, even though, otherwise, he would have the right to use it. International Silver Co. v. William A. Rogers, 67 N.J. Eq. 646;Eureka Fire Hose Co. v. Eureka Rubber Co., 69 N.J. Eq. 159;Cape May Yacht Club v. *Page 56 Cape May Yacht and Country Club, 81 N.J. Eq. 454. If no fraudulent intent in the adoption of the name appears equity will relieve, if the use of such name by another confuses and misleads the buying public to the injury of the complainant. Diversion of complainant's trade by the use of the name is fraudulent. Wirtz
v. Eagle Bottling Co., 50 N.J. Eq. 164; Johnson v. Seabury,69 N.J. Eq. 696; Rubber and Celluloid Harness Trimming Co. v.Rubber Bound Brush Co., 81 N.J. Eq. 419; National Biscuit Co.
v. Pacific Coast Biscuit Co., 83 N.J. Eq. 369. Neither actual confusion nor actual fraudulent intent need be shown where the necessary and probable tendency of the defendant's conduct is to deceive the public and pass off his goods or business as and for that of the complainant. Hilton v. Hilton, 90 N.J. Eq. 564.
Proof of any express intention to pirate the complainant's trade is, of course, not at hand, and, ordinarily, is not to be expected. Is intentional fraud inferable from the circumstances? The outstanding facts refute such an inference. To deduce the intention to mislead the public into believing that the defendant's newspaper is the complainant's sheet, for that is, essentially, the accusation, would be to assume that the "Observer" concedes it is inferior and is outclassed, and aims to forsake its individuality and identity and parade as the "Journal;" in fine, that it admits it is an imitation. Such an attitude on the part of the "Observer" — quite as popular and influential as the "Journal," and as justly proud and jealous of its own good name and reputation — is altogether out of the question. Powerful and successful and well established, its predominant care is, it would seem, to be sustained by its own past achievements, and to thrive and extend its activities and influence as the "Observer" — not as the "Journal." The explanation of the defendant for the change of name from the "Hudson Observer" to the "Jersey Observer" is in harmony. It sought to raise itself in the eyes of the public, and, particularly, of its New York and other advertisers, from what might appear to be a burg or provincial organ to one of the city or state-wide sphere, i.e., eclat. *Page 57 
The other question is whether because of "Jersey" the "Observer" is apt to be mistaken by readers for the "Jersey Journal;" or, in other words, whether the use of the name "Jersey Observer" is likely to deceive ordinarily cautious purchasers, buying with such care as would usually be exercised in such transactions, leading them to believe that they were buying the "Jersey Journal." This is highly improbable except in isolated instances, and then only momentarily or accidentally. The chances are infinitely less than in the case of imitations in merchandise, involving a less cultured and discriminating public. Readers, as a rule, are keen for their accustomed newspaper, and are as intimately familiar with it as men are with their particular brand of cigars, or as ladies with their favorite perfume, and sorely disappointed if it fails them. It is inconceivable that a reader of the "Journal" could be lured into believing that it was the "Observer," and vice versa. A glance at either would be enough. Their makeups are radically different; their names are prominently displayed and in type that bears no resemblance, and while they are both known to be independent politically, with opposite partisan leanings, the political sentiment of one could hardly be mistaken for the other, and, for additional identification, the "Observer" carries its title at the head of each page.
It is not seriously claimed, nor could it be, that the reader is deceived, but the "Journal" complains that its patrons are likely to be led into buying the "Observer" by the manner of its display at news-stands, folded as the "Journal" is, and alongside of it, with only "Jersey" exposed, and more likely at the rush hours at the tubes, railroad stations and ferries when the commuter helps himself, or, asking for the "Jersey" is given the "Observer." Fine discrimination is not expected of purchasers, but ordinary caution is, and in such circumstances the fault would lie with the newsdealer or the commuter, and may be easily remedied by spreading both papers, or by the most casual inspection, and, no doubt, would be corrected after a once happening and a "kick." Equity affords protection against injurious deception, not mishap, nor where ordinary care would avert confusion. *Page 58 
Another source of complaint is that newsboys, carrying both papers, cry out their ware as of old "Jersey-Observer," and so pronounce the full name of the "Observer" and obscure the "Journal." This is unfortunate, but how charge able to the "Observer," if it has the right to use "Jersey?" If the complainant truly interprets the newsboys' call, there is no confusion, and unless it be shown, and it is not, that the "Observer's" forename was purposely selected to usurp the "Journal's" nickname in the street, I fail to see how the name can be denied the "Observer." Jessel, M.R., said of the complainant in Cowen v. Hulton, 46 L.T.R. (N.S.) 897: "He has a right to the name by which he sells his paper, but not the name by which people choose to call it." Moreover, in view of the "Journal's" previous and admitted notoriety as the "Jersey," it seems a strange assertion that those to whom it is so well known by that cognomen would not recognize it in the newsboys' call.
Again, it is claimed that "Jersey" facilitates newsdealers and newsboys palming off the "Observer" for the "Journal." A complete answer is that any unscrupulous handler can impose upon an unsuspecting buyer, not only the "Observer," but any other newspaper as readily. Ordinary care — a squint at the paper — would frustrate it.
That "Jersey Observer" is not an infringement upon "Jersey Journal" is illustrated by the following authorities in litigations over newspaper names, the first mentioned being the name sought to be protected:
"The New Castle Chronicle" and "Sporting Chronicle." Cowen v.Hulton, 46 L.T.R. (N.S.) 897.
"Morning Post" and "Evening Post." Borthwick v. EveningPost, 37 Ch. Div. 449.
"Evening Express" and "North Express." Wilcox v. Pearson, 18T.L.R. 220.
"The Mail" and "The Morning Mail." Walter v. Emmot, 54 L.J.Ch. (N.S.) 1059 (1885).
"National Advocate" and New York National Advocate." Snowden
v. Noah, 1 Hopk. Ch. 347 (N.Y.); 14 Am. Dec. 547. *Page 59 
"The Commercial Advertiser" and "New York Commercial."Commercial Advertiser Assn. v. Haynes, 49 N.Y. Supp. 938.
"Our Young Folks" and "Our Young Folks Illustrated Paper."Osgood v. Allen, 18 Fed. Cas. 871.
The bill will be dismissed.