**PULITZER PUB. CO. v. HOUSTON PRINTING CO.**

(District Court, S. D. Texas, at Houston. March, 1925.)

No. 226.

**1. Trade-marks and trade-names and unfair competition ☼1 — Law of trade-marks is part of broader law of unfair competition.**

The law of trade-marks is but a part of the broader law of unfair competition.

**2. Trade-marks and trade-names and unfair competition ☼53—Essence of right and of injury thereto stated.**

The essence of the right to protection of a trade-mark is that the claimant has an established good will, which it has symbolized by marks, names, or other indicia, and the essence of the wrong consists in the sale of the property of one manufacturer or vendor for that of another.

**3. Trade-marks and trade-names and unfair competition ☼1—Good will, and not mark, which is protected.**

It is not the trade-mark, but the good will in connection with which the mark is used, that is protected, and the proprietor of a trade-mark cannot monopolize markets that his trade has not appropriated.

**4. Trade-marks and trade-names and unfair competition ☼45—Registration statute does not extend or limit common-law right.**

The federal Registration Act is without effect to extend or limit, except in interstate commerce as to remedies, the substantive rights which persons have in trade-marks at common law.

**5. Trade-marks and trade-names and unfair competition ☼45—Registration is not essential to validity.**

Registration does not create a trade-mark, and is not essential to its validity.

**6. Trade-marks and trade-names and unfair competition ☼45, 78 — Use of name for newspaper held not to infringe trade-mark right.**

The use of the name "St. Louis Post-Dispatch" for a newspaper published in St. Louis and of general circulation throughout the country, and the registration of the name "Post-Dispatch" as a trade-mark, held not to exclude the publishers of a newspaper in Houston, Tex., from the right to use the name "Houston Post-Dispatch," where there was no unfair competition, either in intent or result.

In Equity. Suit by the Pulitzer Publishing Company against the Houston Printing Company. Decree for defendant.

Huggins, Kayser & Liddell, of Houston, Tex., and John F. Green, of St. Louis, Mo., for complainant.

Baker, Botts, Parker & Garwood, of Houston, Tex., for defendant.

HUTCHESON, District Judge. This is a bill in equity, brought by the Pulitzer Publishing Company against the Houston Printing Company to enjoin the latter from the use of the words "Post-Dispatch" as the name of a paper published by the defendant at Houston, Tex. The bill was filed on September 15, 1924, and alleges: That complainant is the publisher of a daily and Sunday newspaper known as the "Post-Dispatch," which has been published and circulated under this name since 1878. That on the 1st day of August, 1924, its daily and Sunday editions circulated in every state of the Union and in all of the principal foreign

countries of the world, its daily circulation exceeded 220,000 copies, and its Sunday circulation exceeded 350,000 copies. That on August 1, 1924, its Sunday circulation averaged 24,100 in Texas, 2,000 copies in Louisiana, 12,000 copies in Arkansas, and 20,000 copies in Oklahoma. That from 1878 to August 1, 1924, it was the only newspaper in the United States using this name. That, although the words "St. Louis" were sometimes printed on the paper in connection with the words "Post-Dispatch," these words form no part of its trade-name. That on March 15, 1924, complainant filed in the United States Patent Office an application for the registration of "Post-Dispatch" as a trade-mark or trade-name for its newspaper. That thereafter a certificate of registration of such mark was issued to complainant. That on or about August 1, 1924, defendant acquired two newspapers published in Houston, Tex., known as the "Post" and the "Dispatch" respectively, and on said date consolidated these two newspapers into one, and, fraudulently and intending to reap the benefit of the established trade-mark and good will of complainant, has since said date been publishing said consolidated newspaper under the name of "Houston Post-Dispatch." That, as the result of the unlawful conduct of the defendant, confusion of defendant's paper with complainant's paper has resulted, and the circulation of complainant's newspaper has been and will be greatly interfered with, diminished, and decreased.

Defendant alleges: That prior to the 1st day of August, 1924, it owned and published a newspaper in the city of Houston which was called the "Houston Post." That such newspaper had been continuously published under that name, except for a short period in 1885, since 1883. That immediately prior to August 1, 1924, the defendant acquired the Houston Dispatch, a daily newspaper theretofore published in the city of Houston, and that immediately prior to the consolidation the Houston Post had a daily circulation of 42,000 copies, and the Houston Dispatch an average daily circulation of 18,000 copies. That both papers had established a good will which constituted a valuable asset. That when the papers were consolidated the combined name "Houston Post-Dispatch" was adopted to conserve the good will and assets of both papers, uninfluenced by and without contemplation of the fact that complainant's paper was called the "St. Louis Post-Dispatch." It further asserted: That

the words "Post-Dispatch" were publici juris, and could not be appropriated as a valid trade-mark as against the right of the defendant to use the joint names of the two papers which it had consolidated. That there is no competition between and no confusion of the papers of complainant and defendant. That complainant's paper, the "St. Louis Post-Dispatch," and the defendant's paper, the "Houston Post-Dispatch," are by their very designations clearly and sufficiently distinguished.

The case coming on for hearing, the following facts were established:

(1) That Joseph Pulitzer, through whom complainant holds, in the year 1878 acquired control of two daily newspapers in St. Louis, one called the "Post," and the other the "Dispatch." That on December 12, 1917, these two papers were consolidated, and the consolidated paper was thereafter published under the name "St. Louis Post-Dispatch." That its daily and Sunday circulation was as alleged in the bill.

(2) That during the past 20 years complainant has spent approximately $175,000 in advertising and extending the circulation of its newspaper.

(3) That on March 15, 1924, application was made for registration of the name "Post-Dispatch," and the same was registered, not, however, upon an affidavit of exclusive use prior to February 20, 1905.

(4) By the affidavits of five newspaper stand operators that there is constant confusion between the newsdealers and their patrons as to the "Post-Dispatch" of St. Louis and the "Post-Dispatch" of Houston. That the similarity of names makes it necessary for newspaper dealers, when a customer called for a "Post-Dispatch," to ascertain which paper is desired.

(5) None of these affidavits, however, testified to a single lost sale or a single substitution, and no proof was offered as to the diminution of its sales or loss of business.

(6) That defendant established that, when the Houston "Post" and the Houston "Dispatch" were consolidated, both of them had an established good will, and that the directors, on inquiry, finding that the usual method of combining papers was to combine the names of the constituent papers, in order to preserve the good will, adopted the name "Post-Dispatch" for the sole and only purpose of conserving the assets and good will of the papers being consolidated, without any thought of dissimulation or unfair competition with the complainant's paper, or in

the hope of acquiring, by the use of the name, any of the good will belonging to complainant.

(7) They also proved that it was almost the universal custom, in consolidating newspapers, to use the two constituent names.

(8) Defendant also offered proof that approximately one out of every 14 daily newspapers in the United States used either the name "Post" or "Dispatch," or a component in which either one of these names appears. That the word "Post" has been used for a newspaper as far back as 1643.

(9) That in 1878, when complainant adopted the name, the words "Post" and "Dispatch" were common names for newspapers in the United States. It also proved that the "Dardanelles Post-Dispatch," published at Dardanelles, Ark., in 1897, has been continuously published since that time, the name resulting from the consolidation of two papers theretofore known as "Post" and "Dispatch." That the "Sykesville Post-Dispatch," of Sykesville, Pa., has been published continuously under that name since 1907. That the "Center Post-Dispatch," of Center, Colo., has been published continuously since 1912, under that name. That the "Rockingham Post-Dispatch," of Rockingham, N. C., has been published since 1918.

The evidence showed that more than 90 per cent. of the entire circulation of the "Houston Post-Dispatch" is confined to an area with 50 miles of the city of Houston. The "St. Louis Post-Dispatch" is published at a point more than 800 miles from the city of Houston.

Upon the argument the complainant grounds its right to injunction, not upon an actual fraudulent intent to pirate defendant's good will, but upon the claim that the complainant has a technical trade-mark, established both by use and by registration, which it is entitled to have protected against the confusion of goods which is the natural and inevitable result, as they claim, of the use by the defendant of the same name. The defendant, on the other hand, asserts that complainant has no technical trade-mark, and that, there being no unfair competition, in the sense of a fraudulent purpose to pirate and appropriate complainant's good will, complainant's case is without equity.

While in the law of trade-marks and unfair competition many interesting questions arise, which make individual cases difficult of solution, the law of the case at bar is controlled by the simplest principles. These are:

[1] (1) That the law of trade-marks is but a part of the broader law of unfair com-

petition. Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713.

[2] (2) That the essence of the right is that the claimant has an established good will connected with its trade or business, which good will it has symbolized by marks, names, or other indicia, and the essence of the wrong consists in the sale of the property of one manufacturer or vendor for that of another. Id.

[3] Further, a trade-mark right is not a right in gross or at large, and it is not the trade-mark, but the good will in connection with which the mark is used, which is protected, and the proprietor of a trade-mark cannot monopolize markets that his trade has not appropriated. Hanover v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713; United Drug Co. v. Rectanus Co., 248 U. S. 95, 39 S. Ct. 48, 63 L. Ed. 141.

[4] This is true of common-law trade-marks, and it is equally true of those which have been registered, for the federal Registration Acts are wholly without effect to extend or limit, except in interstate commerce, as to remedies, the substantive rights which persons have in, or in connection with, those trade-marks at common law. Scandanavia Belting Co. v. Asbestos & Rubber Works, 257 F. 937, 169 C. C. A. 87; Andrew Jergens & Co. v. Woodbury Co. (D. C.) 273 F. 952.

[5] Registration does not create a trade-mark. It is not essential to its validity. Armour v. Louisville Provision Co. (C. C. A.) 283 F. 42; Phillips v. Hudnutt, 263 F. 643, 49 App. D. C. 247; Trappey v. McIlhenny (C. C. A.) 281 F. 23. The law is well stated in United Drug Co. v. Rectanus Co., 248 U. S. 97, 39 S. Ct. 48, 63 L. Ed. 141, where the court said, of an effort to predicate a right upon a mark rather than upon a business to which the mark was an incident:

"The asserted doctrine is based upon the fundamental error of supposing that a trade-mark right is a right in gross or at large. * * * There is no such thing as property in a trade-mark, except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trade-marks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption. Its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property, except in connection

with an existing business. * * * It results that the adoption of a trade-mark does not, at least in the absence of some valid legislation enacted for the purpose, project the right of protection in advance of the extension of the trade, or operate as a claim of territorial rights over areas into which it thereafter may be deemed desirable to extend the trade."

And it concludes by reaffirming what Justice Holmes had in the concurring opinion in the Hanover Case so clearly declared, that state lines have great importance in the matter of trade-mark laws, since the law of trade-marks is a matter of state rather than of federal law; the court, in the Rectanus Case, at page 98 (39 S. Ct. 51), saying:

"Property in trade-marks and the right to their exclusive use rest upon the laws of the several states, and depend upon them for security and protection; the power of Congress to legislate on the subject being only such as arises from the authority to regulate commerce with foreign nations and among the several states."

[6] Since as it appears these statutes confer no rights whatever, but merely furnish a method for spreading on the records the evidence of already existing rights, complainant can draw no comfort from them, and his cause must stand upon the common law. Much interesting discussion has occurred in the briefs as to whether, in any event, the name "Post-Dispatch" is publici juris, so that it could not be the subject of a valid trade-mark in its primary significance, and whether, if so, the complainant has, by the use which it has given it, attached to it a secondary meaning, so identifying it with the particular paper published as to give it trade-mark protection.

On these points it is sufficient to say that, since the trade-mark is not a right in gross, but is wholly an incident to a business, a case could never arise between newspapers where the naked question of technical trade-mark could be controlling, for, if a field had been thoroughly appropriated by a newspaper under any name, and a competitor in the same locality used that name, 'the issue of unfair competition on the face of the matter would arise, and an injunction would issue, unless the competitor so surrounded the name with weasel words as to suck out of it all of the significance which its first use had given. Evening Journal Association v. Jersey Pub. Co. (N. J. Ch.) 124 A. 767, and cases cited. Since, as has been stated, no unfair competition could exist, because the business of complainant is not conducted here, it becomes wholly academic whether complainant has a valid trade-mark in other places and under other circumstances.

Nor, in this decision, have I overlooked the testimony that some confusion exists in the news stands, which sometimes requires clearing up. Equity sits for substance, and not for shadow, and no chancellor could ever justify the issuance of its most gracious writ because of the testimony that in some instances confusion had resulted in the initial calling for a paper published in a different state under a different date line, having in every way a distinctive make-up, especially where the paper complaining was claiming a right to exclude another from a field which it had itself not occupied. These incidents are the very straws, and straws are chaff, and while, in the popular adage, straws may "show the way the wind blows," equity has never yet issued its writ to protect either a straw man or a house of straw, for equity saves the wheat and fans the straw.

Finding nothing of substance in complainant's claim that it has appropriated the territory in which the Houston "Post-Dispatch" circulates, so as to give it any right to prevent the appropriation of that field by others, and especially finding that no unfair competition, either in intent or result, has resulted or will result from the use by the "Houston Post-Dispatch" of the combination in its business of the individual names of the constituents of that business, it results that the prayer of complainant should be denied; and it will be so ordered.